THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JAMIE DAVIS, Defendant-Appellant.

First District (5th Division)   No. 1—90—2253

Opinion filed May 1, 1992.

Randolph N. Stone, Public Defender, of Chicago (Carlos Gonzalez and Karen Tietz, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Barbara Jones, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant, Jamie Davis, was convicted of possession of a controlled substance with intent to deliver (Ill. Rev. Stat. 1989, ch. 56½, par. 1401). At the sentencing hearing, defendant also entered pleas of guilty to possession of a controlled substance (Ill. Rev. Stat. 1989, ch. 56½, par. 1402) and to unlawful use of a weapon (Ill. Rev. Stat. 1989, ch. 38, par. 24–1). The trial court sentenced defendant to consecutive terms of six years' imprisonment for possession of a controlled substance with intent to deliver, two years' imprisonment for possession of a controlled substance, and one year's imprisonment for unlawful use of a weapon. Defendant appeals the jury conviction, contending that he was denied a fair trial because of improper comments made by the prosecution at various points during the trial.

We affirm.

Relevant to our disposition are the following facts as disclosed by the record. Defendant originally received a jury trial in December 1989. The trial court, however, ordered a mistrial after the jury could not reach a verdict. Defendant's second jury trial began in April 1990.

The respective testimony deduced by the prosecution and defendant presented contrary versions of fact. The prosecution's testimony indicated the following. On January 6, 1989, Sergeant Thomas Eichler of the Chicago police department dispatched police officers Michael Daukus and Gregory Janettas to conduct a narcotics surveillance at the Scorpion Karate School (school) located at 2338 West Roosevelt in Chicago, Illinois. The officers observed two men (Robert Lee and Leon Johnson) exit the school and enter a Chevrolet van parked on the street. A few minutes later, a third man carrying a sawed-off shotgun under his coat exited the school. This man (Tavares Hall) paced back and forth in front of the school. A few seconds later, defendant exited the school carrying a brown shoulder bag. Defendant and Hall entered the van, which then drove off in a westerly direction on Roosevelt Road. Officers Daukus and Janettas, after contacting Sergeant Eichler by radio, followed the van until it stopped at 3111 West Douglas Boulevard. Sergeant Eichler and additional officers quickly arrived on the scene.

Defendant exited the van with the shoulder bag and walked eastbound on the sidewalk. Officers Daukus and Janettas moved in on the van and ordered Hall to drop the shotgun. Defendant, seeing the commotion, threw the shoulder bag on the parkway and continued walking. Sergeant Eichler detained and arrested defendant; defendant's shoulder bag was retrieved and was found to contain a white powder substance, $14,000 in currency, a grinder, a sifter, a strainer, a funnel and sealable plastic bags. A second shotgun was found in the van. Hall and the two other men were also arrested; all four men were taken to the area police station.

The police officers then returned to the school, where they met the owner, Harold Burrage (defendant's brother). Sergeant Eichler explained to Burrage that four men had just been arrested after they were seen exiting the school. Burrage signed a "Consent to Search" form; the blank spaces were later filled in at the police station. Burrage initially denied any knowledge of drugs or weapons present in the school but soon admitted that he had a rifle on the premises. The officers searched the premises and recovered the rifle, which was unregistered and had been reported stolen from Pennsylvania. The officers also searched Burrage and recovered $1,000 in cash. Burrage was arrested and taken to the area police station. The officers testi-

fied that they did not find a safe in the school. Sergeant Eichler admitted on cross-examination that he had been present on prior occasions in which defendant, Jamie Davis, had been arrested for possession of controlled substances.

Finally, the prosecution called a police chemist who testified that the white powder substance recovered from defendant's shoulder bag was cocaine weighing over 20 grams. The prosecution rested.

Defendant called three witnesses: Harold Burrage, Anthony Gipson, and Victor Gonzalez. Defendant also testified on his own behalf. This testimony indicated the following. On January 6, 1989, defendant was driving his brother's Chevrolet van accompanied by three friends, Tavares Hall, Robert Lee, and Leon Johnson. Robert Lee needed to visit his girl friend, so defendant dropped Lee off and parked the van at 3111 West Douglas Boulevard to wait for Lee.

While defendant waited, a plainclothes officer (Mike McNeil) approached the van; defendant recognized him as "Officer Mike." Officer McNeil asked defendant to step out of the van. Other officers approached and ordered Hall and Johnson out of the van. The three men were placed in a squad car while the officers ran a computer background check. Defendant was ordered out of the squad car and was searched. The police removed defendant's keys. All four men were then taken to the area police station where they were handcuffed to rings on the wall. At about 10 p.m. that night the officers returned to the station with shotguns and bundles of money.

Defendant denied that he got out of the van to walk away, denied that he was carrying a brown shoulder bag or that he threw the bag to the ground, and denied that he possessed $14,000 or any of the drug paraphernalia allegedly found in the bag. Defendant admitted that he had been arrested and convicted twice for the unlawful possession of a gun and that he had a drug charge and a weapon charge currently pending against him.

Harold Burrage testified that he collected approximately $25,000 from a karate tournament in October 1988 and that he stored the money in a safe at the school. Burrage and one of his students, Anthony Gipson, arrived at the school around 7:30 p.m. on January 6, 1989. Burrage saw that two unmarked police cars were parked in front of the school and that the gates to the school were opened. Burrage told Gipson to go to a pay phone and telephone his mother. Burrage walked to the open gates and identified himself. The officers accused Burrage of selling drugs and then handcuffed him. Burrage told the officers that he had a rifle on the premises which had been a gift from one of his students. The officers, without asking for consent,

searched the premises recovering the rifle. The officers also searched Burrage and removed money from his wallet. Burrage was taken to the area police station where he was instructed to sign a folded piece of paper. Burrage was not permitted to read the folded paper but the officers told him that he needed to sign the paper in order to recover the money that was taken from his wallet.

Burrage was released and he returned to his school. The safe containing the $25,000 was missing and the premises were in disarray. Anthony Gipson, who had waited outside the school after telephoning Burrage's mother, testified that he saw police officers remove a safe and some clothing from the school. Louis Gonzalez, another student, testified that he arrived at the school around 6 p.m. and saw police officers remove some clothes and something that appeared to be a safe. Burrage admitted that he did not report the loss of the money to the "authorities."

Having elicited the above testimony, the defendant rested.

In light of the issues addressed in this appeal, we set forth the following comments of counsel made during both opening and closing arguments. During opening arguments, defense counsel clearly stated that the jury would have to decide the case based on a determination of the credibility of the witnesses. Defense counsel then challenged the credibility of the officers' testimony, stating "just because the officer said this is what happened doesn't necessarily mean it's so." Defense counsel later added "[i]t's not to say all police officers are bad, and I don't want you to take that because we are not talking about all police officers *** we are talking about this incident and their relationship with that man, Jamie Davis, and we all know that some people just don't like other people." The prosecution responded, over defendant's objections, by arguing that the police officers would not risk their careers, reputations, and pensions for the sake of framing defendant. The prosecution added that defendant's witness Burrage had a motive to lie because he was defendant's brother and that Gipson and Gonzalez had a motive to lie because they were Burrage's students.

The prosecution commented several times during both opening and closing arguments that the police had received a "tip" concerning drug activity at the school. There was no evidence of a "tip" in the record. The trial court sustained defendant's single objection and instructed the jury to ignore the comment. The prosecution also questioned why Burrage did not report the loss of the $25,000 to the "Illinois State Police Department, or the State's Attorney's office or the

FBI." The defendant objected and the trial court sustained the objection.

In further response to defendant's attack on the credibility of the officers, the prosecution mockingly commented to the jury, "You know what today is? January 6th? No. This is let's frame Jamie Davis day." The prosecution also challenged whether the jury should believe that Sergeant Eichler and the other officers were "big crooks" as characterized by defendant.

Finally, the prosecution commented during closing arguments that defendant had prior arrests. The prosecution commented: "He's arrested in other districts and he has two pending cases, a drug case and gun case pending right now. And these were pending before this particular case." The prosecution specified that the drug case involved possession of "twenty seven packs of cocaine." However, during trial, defense counsel, using defendant's own rap sheet, cross-examined one officer about defendant's prior arrests. The trial court warned defense counsel that the cross-examination would invite comments by the prosecution. During closing argument, defense counsel candidly admitted: "Sergeant Eichler testified that he arrested Jamie Davis on numerous occasions for drugs. Now I'm even the one who brought out all of Jamie's arrests."

After closing arguments, the trial court instructed the jury that the arguments of counsel were not evidence and that the jury should disregard any argument which was not based on the evidence.

OPINION

Initially, we note that defendant has failed to preserve the issues of improper prosecutorial comment by failing to specifically raise them in his post-trial motion. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) Defendant contends, however, that the evidence was closely balanced requiring application of the plain error rule. Although defendant's first trial resulted in a hung jury, that fact alone would not necessarily compel us to view the evidence in the subsequent trial as closely balanced. Nevertheless, even if defendant was correct in his contention that the plain error rule applies, our consideration of the issues would not alter the disposition of this appeal. Accordingly, we will consider the issues as if the plain error rule applied.

We will consider each prosecutorial comment in the order it appears in defendant's brief.

■ First, defendant argues that it was improper for the prosecution to suggest that the police officers' testimony was more credible because of their official position in the community and, more specifi-

cally, that it was improper for the prosecution to comment that the police officers would not risk their careers, reputations, and pensions in order to frame defendant. We acknowledge that courts have generally held that these types of comments concerning police officers' testimony are improper. (*People v. Clark* (1989), 185 Ill. App. 3d 231, 542 N.E.2d 138.) Here, however, as in *People v. Parker* (1979), 72 Ill. App. 3d 679, 391 N.E.2d 89, we believe that the question is not whether the argument was proper, but whether it reached the level of impropriety which deprived defendant of a fair trial. In this regard, defendant argues that the comments unfairly played upon the jury's sympathies. We disagree. The record shows that it was precisely defendant's strategy to make the credibility of the officers the dispositive issue; defendant expressly attacked the credibility of the officers throughout the trial. Therefore, the prosecution's comments, in response to defendant's trial strategy, focused the jury's attention on the dispositive issue; the comments did not unfairly play upon the jury's sympathies and did not deny defendant a fair trial.

█ Second, defendant argues, relying on *People v. Ellison* (1980), 89 Ill. App. 3d 1, 411 N.E.2d 350, that the prosecution improperly commented that Harold Burrage's testimony was biased because he was defendant's brother and that Gipson's and Gonzalez' testimony was biased because they were Burrage's students. We believe that defendant's reliance on *Ellison* is misplaced. There, the court held that it was improper for counsel to comment that two witnesses were biased because they shared the same last name; however, there was no evidence in the record that the witnesses were in fact related. Here, the relationships of defendant's witnesses were established by the record. Therefore, we believe that the prosecutor's comments arose out of a fair inference of facts in the record.

█ Third, defendant argues that the prosecution improperly commented that the police officers had received a "tip" about narcotics activity at the school; the record contained no evidence of any "tip." The prosecution argues that the comment was a reasonable inference from the evidence that the police were conducting a narcotics surveillance. Alternatively, the prosecution, relying on *People v. Jenkins* (1989), 190 Ill. App. 3d 115, 545 N.E.2d 986, argues that the comment was not sufficiently egregious to warrant a new trial. We agree that *Jenkins* applies. There, unsupported by any evidence in the record, the prosecution insinuated that the defendant bribed a witness. The trial court sustained the defendant's objections and admonished the jury to ignore the comment. The appellate court, in turn, held that the court's admonition to the jury was sufficient to cure any perceived prejudice to the defendant.

Here, we do not believe that the comment about the "tip" was any more egregious than a comment about a "bribe." Further, the trial court here, like the court in *Jenkins*, sustained each of defendant's objections and admonished the jury to ignore the comments. We believe that, overall, the jury was not unduly prejudiced by the prosecution's comments concerning a "tip."

Fourth, defendant argues that it was improper for the prosecution to comment that Burrage did not report the loss of the $25,000 to the "Illinois State Police Department, or the State's Attorney's office, or the FBI." Defendant argues that these comments served only to bolster the police officers' testimony. We do not believe that these comments were improper because Burrage did testify that he did not report the loss to the "authorities." To the extent that the comments were improper, we note that the trial judge sustained defendant's objection. Therefore, defendant was not prejudiced.

Fifth, defendant argues that several of the prosecution's comments improperly characterized defendant's theory of the case. Defendant argues that the use of expressions like "frame up" and "big crooks" unduly inflamed the jury. We disagree. Our reading of the record reflects substantial evidence to support the prosecution's characterization of defendant's theory of the case. Further, the prosecution's use of expressions was within an acceptable range for arguments.

Sixth, defendant argues that the prosecution improperly argued evidence of other crimes at his jury trial and therefore denied him a fair trial. We note that the trial court sustained defendant's objection and admonished the jury to disregard the remarks. Moreover, defense counsel invited discussion of defendant's prior arrests. Defense counsel candidly admitted: "Now I'm the one who brought out all of Jamie's arrests." Therefore, we find no error in the prosecution's comments concerning defendant's other crimes.

Finally, we note that, after closing arguments, the trial court instructed the jury that the arguments of counsel were not evidence and that the jury should disregard any argument which was not based on the evidence. Therefore, the trial court cured any residual prejudice from the prosecution's comments. (*People v. Scott* (1990), 194 Ill. App. 3d 634, 551 N.E.2d 288.) In sum, defendant was not denied a fair trial.

Affirmed.

MURRAY and GORDON, JJ., concur.