THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
IVAN GLENN WILLIAMS, Defendant-Appellant.

First District (2nd Division)   No. 1—89—2605

Opinion filed July 14, 1992.

Burch & Delgado, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee G. Goldfarb and Guy L. Miller IV, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McCORMICK delivered the opinion of the court:

Defendant, Ivan Glenn Williams, in a jury trial, was found guilty of first-degree murder (Ill. Rev. Stat. 1989, ch. 38, par. 9—1(a)(1)) and sentenced to a term of 35 years' imprisonment.

On appeal, defendant contends that (1) his statements and certain physical evidence should be suppressed as the product of an illegal arrest; (2) that his statements and certain physical evidence should have been suppressed because the statements were not given voluntarily; (3) inadmissible hearsay was admitted at trial, denying him the right to confrontation; (4) a mistrial should have been declared after a State's witness asked a juror for a date during the trial; and after the jury was advised, outside of defendant's presence, that the vandalization of cars in the court's parking lot was not limited to the juror's car, but included cars of other persons not connected with defendant's case; and (5) that his conviction should be reduced to second-degree murder because the evidence did not prove him guilty of first-degree murder beyond a reasonable doubt. The decision of the trial court is affirmed because we find that defendant's arrest was legal and the trial court's finding that defendant's statements were voluntary is supported by the facts and circumstances of the case. Further, there is no basis for a mistrial in the record and defendant was proven guilty beyond a reasonable doubt.

On Wednesday, December 9, 1987, at about 2:15 p.m., the body of the deceased was found in her apartment on east 14th Street in Chicago Heights. The deceased had been stabbed twice in the left chest and four times in the upper back. The apartment was in a state of disarray and looked ransacked. The walls were splattered with blood and a video cassette recorder was missing.

Detectives David Wierzbicki and Robert Pinnow of the Chicago Heights police department interviewed family members and friends of the deceased at the police station. Detective Wierzbicki learned from Marilyn Nichols, the deceased's mother, that at about 12:30 p.m., she had telephoned the deceased, who said that defendant was in the apartment to use the telephone. She told the deceased that defendant had to leave after he made the telephone call.

Defendant initially appeared at the police station on his own volition with friends and relatives of the deceased. He told the police that at about 12:30 p.m. that day he received a ride from Holbart Buckner to Nichols' apartment. He wanted to see his brother, Roger, who lived at the apartment with Marilyn Nichols. Roger was not there and he asked the deceased to let him use the telephone. He acknowledged that Marilyn Nichols called while he was in the apartment. He stated that the deceased was alive when he left the apartment; also, he said that Buckner, who had waited outside of the apartment, drove him to another location.

Buckner was located by the detectives. Buckner said that at around 12:30 p.m. that day he and James Jett drove defendant to 1416 Green Street. This location is about a block away from Nichols' apartment. Buckner stated that they waited about 10 to 15 minutes and then left without defendant. The detectives interviewed Jett, who corroborated Buckner's account.

The detectives went to defendant's father's house at about 12:10 a.m. By that time, they knew about an active traffic warrant for defendant's arrest. The arrest warrant was for driving on a suspended license. Ill. Rev. Stat. 1989, ch. 95½, par. 6—303.

Defendant was advised that the detectives "needed to speak with him" about the investigation of the Nichols homicide. Defendant went with them to the police station. At the police station, defendant was told that he was under arrest for the traffic violation and investigation of murder.

The following afternoon, defendant was questioned and eventually made three statements.

## I

Defendant states that his arrest was illegal and the confessions and the resulting physical evidence must be suppressed. Three reasons are advanced by defendant to sustain his position: (1) the traffic warrant was invalid because it had been recalled; (2) the traffic warrant was used as a pretext to allow the detectives to take him into

custody to interrogate defendant about the murder; and (3) there was no probable cause to arrest him.

The State argues that defendant has waived any challenge to the legality of his arrest because he failed to include it in his motions to suppress or in his motion for new trial. *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.

Defendant acknowledges that he failed to raise the illegal arrest claim but requests that we review it under the plain error rule contained in Supreme Court Rule 615(a). (134 Ill. 2d R. 615(a).) In *People v. Alexander* (1991), 212 Ill. App. 3d 1091, 571 N.E.2d 1075, we observed that even constitutional errors could be waived under *Enoch* where a post-trial motion fails to preserve the issue "unless the error reasonably could have affected the verdict or if it would have resulted in a failure to afford the defendant due process of law." (*Enoch*, 212 Ill. App. 3d at 1102-03.) We said that "limiting our review to issues which could reasonably have affected the verdict still adequately ensures that serious injustices are corrected and that the integrity and reputation of the judicial process is preserved." *Alexander*, 212 Ill. App. 3d at 1103; see also *People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 461.

Although we conclude that the claim of an illegal arrest has been waived, we will review it in the interest of judicial economy, as it involves a constitutionally based issue.

(1)

Defendant does not argue that the arrest warrant was invalidly issued. He argues that it was recalled as a matter of law. Defendant relies on the following general orders of the circuit court:

> "Effective immediately, a moratorium is hereby declared on the service and execution of all warrants covering state, county and municipal ordinance violations punishable by fine only until further order of Court." May 17, 1984. General Order No. 84—4(M).

> "Effective immediately, all warrants covering state, county and municipal ordinance violations punishable by fine only are hereby recalled and quashed." (June 6, 1984. General Order No. 84—6(M).)

Neither of the foregoing orders applies to the traffic warrant at issue.

The common law record states that defendant's traffic warrant was for a violation of section 6—303 of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 6—303), which punishes driving on a suspended license as a Class A misdemeanor. Under the Unified

Code of Corrections, section 5—8—3(a) (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—3(a)), a Class A misdemeanor, is punishable by a determinate prison sentence of less than one year. Therefore, the general orders affecting ordinance violations punishable only by a fine do not apply to defendant's traffic warrant. Therefore, for purposes of the fourth amendment, we conclude that defendant's December 10, 1987, arrest for driving on a suspended license was lawful and that the ensuing custody was reasonably related to that arrest.

### (2)

Defendant contends that the arrest warrant was merely a pretext to allow the detectives to take him into custody to accomplish their real purpose, which was to interrogate him about the murder. Defendant argues that, therefore, his custody was illegal and his confessions and the resulting physical evidence must be suppressed.

While it is true that a suspect cannot be detained for custodial questioning on less than probable cause (*Dunaway v. New York* (1980), 442 U.S. 200, 60 L. Ed. 2d 824, 99 S. Ct. 2248; *People v. Holveck* (1990), 141 Ill. 2d 84, 95, 565 N.E.2d 919), generally, an arrest supported by a duly authorized warrant is a valid arrest (Ill. Rev. Stat. 1989, ch. 38, par. 107—2(a); *People v. Spence* (1976), 43 Ill. App. 3d 1044, 357 N.E.2d 1245; see also *Watson v. United States* (1976), 423 U.S. 411, 46 L. Ed. 2d 598, 96 S. Ct. 820). Moreover, it is permissible for police officers to arrest a suspect on a minor offense and conduct questioning on a more serious offense and the arrest will not be deemed pretextual as long as the arrest on the minor offense is valid. (*People v. Perry* (1990), 204 Ill. App. 3d 782, 562 N.E.2d 618 (arrest for driving without a license, which arose out of stop for failure to display rear registration plate, was not pretext for subsequent search of purse revealing cocaine).) Similarly, in *People v. Hattery* (1989), 183 Ill. App. 3d 785, 813-19, 539 N.E.2d 368, the court affirmed, as not manifestly erroneous, a trial court's ruling that an arrest warrant for aggravated battery was not executed as a pretext to allow questioning on an unrelated murder case. The court relied on the rule of objective reasonableness and concluded that, while the police may have been motivated to execute the warrant for reasons unrelated to the murder, the confession to the murder obtained following the arrest under the battery warrant was admissible. *Hattery*, 183 Ill. App. 3d at 818-19.

The *Hattery* court cited, among other cases, the decision in *People v. Anderson* (1988), 169 Ill. App. 3d 289, 523 N.E.2d 1034, which involved a warrantless arrest for driving on a suspended license of a

person suspected of murder and known to have a prior record for violent crimes. In *Anderson* the appellate court held that, because the police officers acted with objective reasonableness in validly arresting defendant for driving on a suspended license, the trial court erred in granting his motion to suppress his murder confession obtained during custody on the suspended license arrest. The court stated:

> "Having effectuated a valid custodial arrest, there is no question that they had the authority to transport the defendant to the police station and question him about another crime of which he might have knowledge." *Anderson*, 169 Ill. App. 3d at 299-300.

Finally, in *People v. Fickett* (1990), 204 Ill. App. 3d 220, 562 N.E. 2d 238, a claim of a pretextual arrest was rejected where defendant was arrested after admitting to a police officer that he had outstanding warrants in the suburbs. The officer was investigating the disappearance of a female and wished to question Fickett about her. The officer knew Fickett had been seen dancing with her the night before and that they were seen leaving the bar together. Additionally, evidence suggested that they had gone to his apartment. The court observed that,

> "[o]bjectively viewed, the fact that Fickett had outstanding warrants gave the officers the right to arrest him even though they obviously desired to question him regarding the missing girl, Wendy. Having effectuated a valid arrest, there is no question that the police officers had the authority to transport defendant to the police station and question him about another crime of which he might have knowledge." *Fickett*, 204 Ill. App. 3d at 226.

Based on the foregoing decisions, if the traffic warrant was valid, then defendant was lawfully seized and held in custody even if the detectives otherwise lacked probable cause to arrest him for murder.

### (3)

In this case, we need not address the issue of probable cause because it is clear that the traffic warrant was a valid basis for the arrest of defendant.

### II

Defendant next contends that the confessions and certain physical evidence were obtained by the use of physical and mental coercion

and without his being advised of *Miranda* rights. Defendant filed a motion to suppress his statements prior to the trial.

Detective Wierzbicki testified at a suppression hearing that prior to the first interview, defendant was read *Miranda* warnings (*Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602), from a card that was dated and which defendant signed, waiving his rights. Defendant's first statement was made at 1:50 p.m. and was exculpatory and tended to implicate Buckner. Next, the officers reinterviewed Buckner and Jett. Defendant was interviewed the second time at about 5 p.m. and was advised that his information regarding Buckner's involvement had been checked out and was found to be false. Defendant was advised that after talking to Buckner and Jett a second time, the detectives found many discrepancies between his and their stories. Defendant then became very emotional and broke down and said that he could not hold it inside any longer and would tell them the truth. The interview lasted about an hour and a half. Defendant went with the officers to a location and showed them where he had hidden physical evidence from the crime.

Subsequently, between 6:30 and 7 p.m., defendant agreed to make a written statement. In addition to the warnings, defendant wrote his name and address on the form on which the detectives wrote the body of his statement. At the end were several questions which defendant answered in his own writing. One of those questions answered "yes" by defendant was whether the statement was made of defendant's own free will and not through fear, threats, inducements or promises of reward. Afterward, defendant was asked to sign each of the six pages of the written statement after reading it out loud. Defendant signed each of the six pages.

Defendant's confession stated that he went to the deceased's apartment looking for his brother and was allowed to make a telephone call. A struggle started when he teased the deceased and tried to put his arm around her. At that time, she produced a knife. Defendant and the deceased struggled and fell onto the floor. The deceased was stabbed in the chest. Defendant continued to struggle and got the knife away from the deceased. Defendant stabbed the deceased once in the back after pushing her onto the couch. At that point, something kept telling defendant that he would go to jail for the rest of his life, so defendant stabbed the deceased three more times in the back, thinking that she had to die.

Defendant was then photographed, showing his right hand with a knife wound or wounds.

Detective Wierzbicki testified that defendant did not indicate that he did not understand his *Miranda* rights or that he wanted to talk to a lawyer or that he did not want to talk to the detectives. Wierzbicki denied that threats or force or promises were made to induce defendant to confess; defendant was not told that he could leave the police station if he confessed.

Defendant testified at the suppression hearing and denied that the detective told him of the existence of the traffic warrant for his arrest. He stated that prior to making his oral statement on December 10, Wierzbicki, Pinnow and a third officer had stood over him and screamed at him and threatened to hit him in the mouth. Defendant testified that the third officer "really put on a show," and that he was very shaken and fearful of being hit and that he cried throughout the statement.

Defendant stated that he did not receive *Miranda* warnings until after he made the oral confession. Then he executed three *Miranda* waivers. Defendant denied that he had read the written confession before he signed it. He had assumed that the officers wrote down what he told them.

The trial court found defendant's statements were voluntary. In addition, the trial court noted that the traffic warrant case was before the court. On the motion of the State, that matter was stayed until the trial date of the case at bar.

During the continued overnight custody, defendant was not questioned, but was left alone. When defendant was interviewed, beginning at 1 p.m. the next afternoon, he was provided *Miranda* warnings and elected to talk to the detectives. Had defendant exercised his *Miranda* rights, questioning should have ceased. Defendant was provided *Miranda* warnings three separate times during the next five- or six-hour period. He waived those rights each time and elected to talk to the police. During almost half of that time, the detectives were questioning other witnesses to check out defendant's initial statement. The brief extension of defendant's detention on the traffic warrant, while the officers sought to question him on the murder case, was not unreasonable and, therefore, not a violation of the fourth amendment. See *People v. Smith* (1990), 203 Ill. App. 3d 545, 561 N.E.2d 252.

In *Smith*, the appellate court affirmed a conviction for first-degree murder based on defendant's confession obtained following his arrest on a misdemeanor warrant. The appellate court held that there was no unnecessary delay in presenting defendant to a court on the traffic offense in violation of the speedy arraignment statute. Rather, and noting that the general rule in confession cases is that delay in

arraignment is a factor to be considered in the analysis of the issue of voluntariness and is not a rule of *per se* exclusion, the appellate court held that delay occasioned by the taking of a voluntary statement is reasonable delay under section 109—1(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 109—1(a)). "Once a defendant in lawful custody knowingly waives his *Miranda* rights and indicates a willingness to talk to police," there is no obligation on the police "to interrupt their interrogation as long as its length is not unreasonable and the suspect's statements continue to be voluntary." (*Smith*, 203 Ill. App. 3d at 563; *cf. People v. Quarrels* (1980), 88 Ill. App. 3d 340, 410 N.E.2d 497 (Officer learned charge for which defendant arrested was invalid but continued to interrogate defendant on second charge; held: continued detention was illegal and confession to second charge suppressed).) Therefore, defendant's illegal arrest argument fails to persuade us that his confessions should have been suppressed.

We now turn our attention to the issue of whether defendant's confessions were the product of a knowing, intelligent and voluntary waiver of his *Miranda* rights and the parallel rights provided by Illinois statutory law under section 103—2(a) of the Code of Criminal Procedure. Ill. Rev. Stat. 1989, ch. 38, pars. 103—2(a), (b), (c); *People v. Bernasco* (1990), 138 Ill. 2d 349, 562 N.E.2d 958; see also Ill. Rev. Stat. 1989, ch. 38, par. 114—11.

Generally, the State bears the burden of establishing by a preponderance of the evidence that a confession is voluntary. (*People v. Caballero* (1983), 102 Ill. 2d 23, 464 N.E.2d 223.) Similarly, the burden of proving that defendant voluntarily, knowingly and intelligently waived his *Miranda* rights is on the State by a preponderance of the evidence. (*People v. Reid* (1990), 136 Ill. 2d 27, 51, 554 N.E.2d 174.) Once the State makes a *prima facie* showing that the confession was voluntary or the waiver of rights was voluntary, knowing and intelligent, the burden of proceeding shifts to defendant to show otherwise. *Reid*, 136 Ill. 2d at 51.

The trial court's decision on the issue of voluntariness or the issue of the validity of a *Miranda* waiver will not be overturned on appeal unless it is against the manifest weight of the evidence. (*Caballero*, 102 Ill. 2d at 33; *Bernasco*, 138 Ill. 2d at 368; *People v. Galvin* (1989), 127 Ill. 2d 153, 535 N.E.2d 837.) Whether a confession is voluntary depends on whether, considering the totality of the circumstances, the confession is found to have been made freely and voluntarily without compulsion, or whether defendant's will was overborne at the time he confessed so as not to be the product of a rational intellect and free

will. (*People v. Redd* (1990), 135 Ill. 2d 252, 292, 553 N.E.2d 316; *People v. Kincaid* (1981), 87 Ill. 2d 107, 429 N.E.2d 508.) In determining whether a defendant voluntarily, knowingly and intelligently waived his *Miranda* rights, a court must consider the totality of the circumstances, including the characteristics of defendant and the details of the interrogation. (*Reid*, 136 Ill. 2d at 54-55.) Under Illinois law, intelligent knowledge is one component of overall voluntariness rather than an admissibility criterion separate from voluntariness, as under *Miranda* waiver law. *Bernasco*, 138 Ill. 2d at 365.

Defendant was given *Miranda* warnings three different times and each time he waived his rights to silence and to counsel. The signed warning cards and written statement containing *Miranda* warnings were introduced into evidence at the suppression hearing. The trial court had ample evidence before it to support the conclusion that defendant voluntarily, knowingly and intelligently signed and waived each warning in accord with the State's evidence. We cannot substitute our judgment for that of the trial court, which determined that the confession was voluntarily made. See *People v. Childers* (1981), 94 Ill. App. 3d 104, 111, 418 N.E.2d 939.

Defendant's claim not to have eaten prior to making his written confession and to having been promised food before making the written confession is not persuasive. The trial testimony indicates that defendant was provided food in the morning of December 10, as a matter of routine jail procedures, and the uncontested evidence at the suppression hearing indicated that defendant never complained about a lack of food. Under these circumstances, we see no reason to disturb the trial court's ruling.

Finally, as to the delay in presenting defendant with the bail option or bringing him before a court on the traffic arrest warrant, we note that that is but one factor in the overall voluntariness assessment. (*Redd*, 135 Ill. 2d at 296; *Smith*, 203 Ill. App. 3d at 564.) As for bail, there is no showing that defendant was unaware of his right to bail by virtue of the requirement that notice thereof be posted at the jail. (Ill. Rev. Stat. 1989, ch. 38, par. 103—7.) As for the failure to take him before a judge, we note only that defendant, who was in custody for about 17 hours before his first confession, freely talked with the detectives after *Miranda* warnings were given. On this record, the delay in processing him on the traffic warrant was not such as to have coerced his confessions.

We, therefore, conclude that the trial court did not err in denying defendant's motion to suppress his confessions as an unintelligent

waiver of his right to remain silent and to counsel as provided by *Miranda* or Illinois law.

### III

Defendant argues that alleged hearsay was improperly admitted at trial through the testimony of Detective Wierzbicki. On direct examination, Detective Wierzbicki was asked to relate the contents of Holbart Buckner's statement of December 9. Defendant objected on grounds of hearsay. The objection was overruled when the prosecutor stated that the statement was not being offered for the truth of its contents, but rather, to show how the officer conducted his investigation.

Detective Wierzbicki then related Buckner's statement that he and James Jett had driven defendant to an address on Green Street on December 9, 1987, and had left without him after waiting about 15 minutes. Subsequently, defense counsel objected on the grounds of "hearsay" and "knowledge" when the prosecutor asked Detective Wierzbicki to recount the contents of Jett's statement of December 9, 1987. The objection was sustained because of a lack of foundation.

A subsequent question brought forth the content of the statement without further objection. Defendant now contends that he was denied a fair trial by the introduction of Jett's hearsay testimony. It is further claimed that because Jett did not testify at trial, defendant's right of confrontation was violated.

Recently, our supreme court ruled that the failure to raise a contemporaneous objection to each in a series of statements waives appellate review of the unobjected-to statements, even where prior objections to similar statements were overruled. (*People v. Steidl* (1991), 142 Ill. 2d 204, 233, 568 N.E.2d 837.) Therefore, we agree with the State's argument that defendant has waived this issue.

■ Nevertheless, our review of the merits of this issue reveals that no inadmissible hearsay came before the jury. (*People v. Simms* (1991), 143 Ill. 2d 154, 173-74, 572 N.E.2d 947.) Hearsay is an out-of-court statement offered at trial to prove the truth of the matter asserted, with the value of the statement resting on the credibility of the person who made the out-of-court statement. (*People v. Billingsley* (1989), 184 Ill. App. 3d 142, 146, 539 N.E.2d 1302.) Testimony about an out-of-court statement which is used for a purpose other than to prove the truth of the matter asserted in the statement is not hearsay. *Simms*, 143 Ill. 2d at 173.

In *Simms*, an officer's testimony at the first stage of a sentencing hearing that defendant's brother had said defendant had admitted the

homicide to him was held not hearsay and so admissible to explain why the officer continued to question defendant about the victim's murder after defendant had offered a plausible explanation for a wound on his leg. Similarly, we are able to discern from the record that the purpose of Detective Wierzbicki's testimony about Jett's statement was to explain why he sought to reinterview defendant only a few hours after talking with him at the police station and obtaining a plausible assertion of innocence. Therefore, we conclude that the statement was not inadmissible hearsay. See *Simms*, 143 Ill. 2d at 174; see also *People v. McNeal* (1987), 160 Ill. App. 3d 796, 801, 513 N.E.2d 897, 901; *People v. Palmer* (1989), 188 Ill. App. 3d 414, 422, 545 N.E.2d 743, 751.

Where the trial court admits out-of-court statements for the limited purpose of explaining why the police acted as they did in their investigation, the court must specifically instruct the jury that the statement is introduced for a limited purpose and that the jury is not to accept the statement for the truth of its contents. Absent a showing to the contrary, it is presumed that the jury will follow the court's instruction. (*Simms*, 143 Ill. 2d at 174.) In the case at bar, defendant's jury was not told that the evidence was admitted for a limited purpose only and not to accept it for the truth of its contents. However, while James Jett did not testify, Holbart Buckner did. Buckner related essentially the same version of events as appeared in Jett's statement. Thus, even assuming the jury may have used Jett's statement for the improper purpose, the prejudicial effect would have been to bolster Buckner's testimony. Had defendant renewed his hearsay objection, a proper instruction would have been given. (See *People v. Foster* (1990), 198 Ill. App. 3d 986, 556 N.E.2d 1214; *People v. Green* (1985), 136 Ill. App. 3d 361, 483 N.E.2d 606.) In the absence of such objection, defendant cannot complain that such an instruction should have been given. We find no error.

## IV

Defendant's claims that the trial court should have granted his motion for mistrial because of an incident reported by a juror and that reversible error occurred when the jury was admonished outside of the presence of defendant and defense counsel to disregard acts of vandalism in the parking lot of the court house.

During the third day of trial, a juror informed the court that one of the State's witnesses had approached her in the parking lot and asked her for a date. The juror told the witness that his behavior was inappropriate and had no further conversation with him. The court

questioned the juror outside the presence of the other jurors. The juror told the court that the incident would have no effect on her and that she had not communicated it to any of the other jurors. A motion for mistrial was denied. The court discharged the juror on defendant's request. At the same conference, defense counsel asked the court to take action regarding a note from another juror which raised the matter of the juror's car tire having been punctured. Defense counsel requested that the juror be questioned or informed that other cars in the parking lot had also been vandalized, including those of court employees and others not involved in defendant's case. The court assured defense counsel that the jury had been so admonished. There is no record of how and when the admonishments to the jury took place.

Under Supreme Court Rule 341(e)(7) (134 Ill. 2d R. 341(e)(7)), defendant has waived these issues by failing to provide supporting authority in his brief. *People v. Dinger* (1990), 136 Ill. 2d 248, 254, 554 N.E.2d 1376.

■ Independent of any waiver, there was no abuse of discretion by the trial court in excusing the juror who reported being asked for a date by a witness for the State. A trial court may discharge a juror in the exercise of sound discretion, where there is no cause for declaring a mistrial and where defendant is not prejudiced. (*People v. Rohwedder* (1968), 106 Ill. App. 2d 1, 5-6, 245 N.E.2d 282.) Here, the defendant was not prejudiced because the juror never discussed the incident with the other jurors. The juror was excused at the request of defendant.

Regarding the claim, raised for the first time on appeal, that the jury had been improperly advised outside of defendant's presence, we note that the general rule is that a jury verdict will not be set aside because of a communication with a juror by court personnel or other third persons outside the presence of the accused where it is apparent that no prejudice resulted from the exchange. (*People v. Cart* (1981), 102 Ill. App. 3d 173, 187, 429 N.E.2d 553.) Defendant has made no prejudice showing from the exchange in this case.

## V

Finally, defendant contends that the evidence was insufficient to convict him of first-degree murder. He asks that this court reduce his conviction to second-degree murder. The question presented is whether the evidence, viewed in a light most favorable to the prosecution, permits any rational trier of fact to find beyond a reasonable doubt the essential elements of the offense for which defendant was convicted. *Jackson v. Virginia* (1979), 443 U.S. 307, 61 L. Ed. 2d

560, 99 S. Ct. 2781; *People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 453.

Defendant testified at trial that he had stabbed the deceased in self-defense. Defendant testified that he had gone to Nichols' apartment in search of his brother and that the deceased let him in to use the telephone. After making several telephone calls and watching television, he teased the deceased about her weight and tried to kiss her on the jaw. The deceased threatened to kill him and attacked him with a knife. Defendant tried to defend himself and take the knife away from the deceased. They struggled and fell onto the floor with defendant falling on top of the deceased. He observed that she did not move any more. Defendant was cut in the hand and had blood all over him. Defendant went outside and returned, crying, and decided to make it look like someone had broken into the apartment. After doing that, defendant then left, hid a video cassette recorder taken from the apartment and changed his clothes.

At the close of evidence, the jury was instructed on first- and second-degree murder. The jury subsequently returned a verdict of guilty of first-degree murder.

Every reasonable hypothesis of innocence need not be excluded to sustain a conviction. It is the function of the trier of fact to weigh the credibility of witnesses and to resolve conflicts or inconsistencies in the testimony and a reviewing court will not retry defendant. (*People v. Foster* (1990), 199 Ill. App. 3d 372, 387, 556 N.E.2d 1289.) Thus, a reviewing court will not substitute its judgment as to the weight of the evidence and will reverse a criminal conviction only where the evidence is so unsatisfactory as to justify a reasonable doubt of defendant's guilt. *Young*, 128 Ill. 2d at 51.

The elements of first-degree murder are provided in section 9—1(a) of the Illinois Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a)). Relevant to the instant case are the first two of three subsections of the statute:

"(a) A person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death:

(1) He either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to the individual or another; or

(2) He knows that such acts create a strong probability of death or great bodily harm to that individual or another." (Ill. Rev. Stat. 1987, ch. 38, pars. 9—1(a)(1), (a)(2).)

In the case at bar, defendant raised a self-defense claim. Where a defendant asserts the affirmative defense of self-defense and introduces some evidence tending to prove he acted in self-defense, the State must then prove beyond a reasonable doubt that the use of deadly force was not justified. (*People v. Berry* (1988), 175 Ill. App. 3d 420, 529 N.E.2d 1001; *People v. Ortiz* (1978), 65 Ill. App. 3d 525, 382 N.E.2d 303.) The trier of fact must determine whether defendant's belief that the situation required deadly force was a reasonable belief under the circumstances. As to that finding, this court will not reverse the trier of fact unless the evidence is so improbable or unsatisfactory that it raises a reasonable doubt as to defendant's guilt.

■■ The jury rejected the self-defense claim. While defendant testified that the deceased had been the aggressor, the jury was not required to accept his testimony. Moreover, from the number and severity of the wounds, the jury could have decided that defendant had formed the intent to kill her. In addition, defendant's confession contained the statement that he had formed the intent to kill the deceased after some initial injuries had occurred, which was consistent with the testimony of the pathologist that there were two chest wounds and four back wounds. Although defendant denied that he had made any statement to the officers reflecting an intent to kill, the determination of that factual issue must be left to the jury. Finally, defendant's efforts to depict a homicide/burglary and his changing of his clothes and attempts to mislead the police by making false statements were sufficient to permit the jury to reject the self-defense claim.

Defendant's reliance on *People v. Brown* (1974), 19 Ill. App. 3d 757, 312 N.E.2d 789, is misplaced. That case involved a defendant who shot two persons and then shot a third as she suddenly stepped out of a bedroom. While Brown's self-defense claim was rejected, on appeal this court reduced his conviction from murder to voluntary manslaughter because his belief in the imminence of life-threatening danger was established, but deemed unreasonable. The case at bar is hardly analogous. Therefore, on the record before this court, the evidence supporting defendant's conviction for first-degree murder is deemed sufficient.

For all of the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SCARIANO and DiVITO, JJ., concur.