No. 1-94-2395

THE PEOPLE OF THE STATE OF ILLINOIS, )   Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County

)

)

v. ) 

)

) 

ROBERT WILLIAMS, ) 

) 

Defendant-Appellant. ) The Honorable

) Dennis A. Dernbach,

) Judge Presiding

PRESIDING JUSTICE DiVITO delivered the opinion of the court:

A jury found defendant Robert Williams guilty of armed violence and possession of a controlled substance.  The circuit court sentenced him to 18 years in the custody of the Illinois Depart­ment of Corrections for the armed violence conviction and a concurrent three-year sentence for the controlled substance offense.

On appeal, defendant contends that he was denied a fair trial (1) by the admission of evidence, for impeachment purposes, of his prior convic­tion for voluntary manslaugh­ter; (2) by the admission and use of testimony concerning the substance of a conversa­tion police had with a nontestifying citizen; and (3) by the State's argument that the testimony of two witnesses was more credible than defendant's because they were police officers.

Before trial, defendant filed a motion to suppress a gun and drugs police said they had recovered from him at the time of his arrest.  After a hearing, the circuit court denied this motion.

Defendant then filed a motion 
in limine
 to prohibit the State from introducing evidence of his prior convictions for voluntary manslaughter and violation of bail bond.  The court denied this motion based on the supreme court decision in 
People v. Montgomery
, 47 Ill. 2d 510, 268 N.E.2d 695 (1971).

Defendant also asked the court to prevent the State from introducing evidence of a conversation between police and a citizen who did not testify at trial.  That conversation was the basis for the police placing defendant's car under surveillance and ultimate­ly stopping him.  The court denied this motion 
in limine
.  It decided that evidence of the conversa­tion did not violate the hearsay rule because it explained the actions of the police officers.

At trial, Officer Al Elizondo testified that he and his partner, Officer Dan Kenezovich, were working as members of the Chicago police department tactical unit on December 9, 1992.  They were not wearing uniforms and were riding in an unmarked car.  At approxi­mately 10 p.m., a citizen motioned to them to stop near 3200 East 92nd Street.  

Defendant objected to Elizondo's testimony concerning his conversa­tion with the citizen, but the circuit court overruled the objection.  The court, however, gave the jury a limiting instruc­tion:

"Ladies and gentlemen of the jury, I am allowing this conversation between the defendant [
sic
] and the citizen in for a limited purpose to show the conduct of the police officers.  It should not be considered by you as evidence against the defendant in terms of his guilt or innocence to the charges before the Court."

The court granted defense counsel's request for a standing objection to the conversation.

Elizondo testified that the citizen said that a man had approached him, had pointed a nickel-plated gun at him, and had told him to pay his debt "or else."  The citizen stated that he knew this man as "Bayman" but that his real name was Robert Williams.  He described the man as a black male in his late forties or early fifties, who weighed approximately 200 pounds, and who was approxi­mately 5 feet 9 inches tall.  The citizen stated that he did not know where this man was, but he knew where the man's car was.   The citizen drove with Elizondo and his partner to a location on the 3200 block of East 92nd Street.  He told the officers that the blue 1980 General Motors car that was parked on that block belonged to the man who had threatened him.  There was no one in the car at that time.  The citizen refused to sign a complaint against the man who threatened him, and Elizondo did not remember the citizen's name because he did not write it down.  After their conversa­tion ended, the officers complied with the citizen's request that they let him out of their car on the 3200 block of 91st Street.  

After leaving the citizen, Elizondo and his partner returned to the 3200 block of East 92nd Street and parked three-quarters of a block behind the car the citizen had shown them.  At this time, the car engine was running, and there was someone sitting in the front passenger seat.  Elizondo called for assistance, and Officers Stevenson and McDonald drove in another car to a surveillance position one-half a block in front of the subject car.  

After about 15 minutes, an individual matching the citizen's description exited a building, crossed the street, and entered the driver's side of the subject car.  Elizondo identified this individual as defendant.  

As defendant began to drive away, the assisting officers moved their car to block his forward progress, and Elizondo parked his car behind defendant's.  Elizondo approached defendant's car from the driver's side and asked defendant to exit his car.  

When Elizondo performed a "protective patdown search" of defen­dant, he felt what seemed to be a gun in defendant's right coat pocket.  He reached into the pocket and retrieved a .38-caliber Rossi revolver.  The gun contained five live bullets.  Elizondo announced that he had found a gun and handed it to one of the assisting officers.  He then arrested defendant and placed him in handcuffs.  

He continued to search defendant and, in one of defendant's pockets, he found 15 plastic bags containing a substance that appeared to be cocaine.  Elizondo could not remember in which pocket he found the bags.  He also found $450 in one of defendant's pants pockets.  Elizondo also searched defendant's car, including the area under the hood, before impound­ing it.  

The assisting officers then transported defendant to the police station.  After a female officer searched the female passenger who had been sitting in defendant's car, the officers released her.

Officer Tyrone Stevenson testified that he responded to Elizondo's call for assistance.  He explained that Elizondo had called for "a meet in regard to the man that supposedly had a gun and [was] threatening another individual."

Like Elizondo, he testified that he and his partner placed their car in a surveillance position on the 3300 or 3400 block of 92nd Street and, after about 15 to 20 minutes, they saw defendant, who matched the citizen's description, cross the street and enter the subject car.  Stevenson moved his car to block defendant's exit and, after doing so, he and Elizondo approached defendant's car from the driver's side.

Stevenson testified that Elizondo asked defendant if he was Bayman or Babyman, and defendant did not respond.  Defendant responded affirmatively, however, when Elizondo asked if he was Robert Williams.  When defendant exited the car, Elizondo performed a "protective patdown" of defendant and found a gun with a silver handle in one of defendant's right coat pockets.

Elizondo handed the gun to McDonald or Kenezovich, placed defendant under arrest, and put him in handcuffs.  After placing defendant under arrest, Elizondo continued to search defen­dant, but Stevenson did not observe this portion of the search because he began to search defendant's car.  Elizondo also searched the car after Stevenson left to drive defendant to the police station.

After this testimony, there was a stipulation that, if called to testify, Chicago police department chemist Jimmie Julian would testify that the plastic bags recovered from defendant contained 1.52 grams of a substance containing cocaine.  The State then rested its case in chief.

The defense case consisted of defendant's testimony.  He testified that, at approximately 10 p.m. on December 9, 1992, he was visiting friends in a building at 3200 East 92nd Street.  He drove there with his friend Kathy Minifield.  She stayed in the car while he went into the building for 15 minutes and drank with his friends.  He then left the building, walked across the street to his car, and attempted to drive away, but an unmarked car blocked his way.  There was also another unmarked car and four or five marked cars.  There were 8 to 10 officers.

A police officer in plain clothes ordered him out of the car.  Defendant testified that this officer was not Elizondo.  The officer called him Bayman, but defendant told the officer "no," his name was Robert Williams.  He did admit at trial, however, that his nickname was Bayman.

An officer other than Elizondo searched him and said "look what I found" when he reached into his inside coat pocket.  Defen­dant did not see what the officer took out of his pocket.  He testified that he had bought the coat he was wearing earlier that night from a friend who needed money.  According to defendant, he paid $10 for the coat and also gave the friend his thinner coat.

After the officer searched him, Officer Stevenson and another officer searched his car and pulled a shiny revolver from under the hood.  The officers then arrested him, placed him in handcuffs, and sat him in a police car.

The officers gave Minifield permission to drive defendant's car, but she could not drive it because she did not have a license.  The officers therefore placed her in the back of the same police car where defendant was sitting.  As they were driving, she tried to take her rent money from defendant's pockets, but the police stopped her.

Defendant testified that he did not know that he was charged with a drug-related offense until he arrived at the police station, and he never saw the drugs at the station.  He admitted that he may have testified at the hearing on the motion to suppress that he did not see any drugs until he arrived at the station, but he main­tained at trial that he did not see any drugs at the station.  He also testified that police did not take his money from him until he arrived at the station.

The State presented no evidence in rebuttal.  After closing arguments, the jury found defendant guilty of one count of possession of a controlled substance and one count of armed violence.  The circuit court denied defendant's motion for a new trial and sentenced defendant to 18 years' imprison­ment for the armed violence conviction and imposed a concurrent three-year sentence for possession of a controlled substance.

Defendant argues that we must reverse his conviction because the circuit court erred in allowing the State to introduce evidence of his prior conviction for voluntary manslaughter.  In 
People v. Montgom­ery
, 47 Ill. 2d 510, 268 N.E.2d 695 (1971), the supreme court held that a witness' prior conviction is admissible if the conviction (1) was punish­able by death or imprisonment in excess of one year, or (2) involved dishonesty or false state­ment, (3) unless the circuit court determines that the probative value of the evidence is substan­tial­ly out­weighed by the danger of unfair prejudice.  In addition, evidence of a conviction would not be admissible "if a period of more than 10 years has elapsed since the date of conviction or of the release of the witness from confine­ment, whichever is the later date."  
Montgomery
, 47 Ill. 2d at 516.  The 
Montgomery
 court emphasized that the admis­sion of prior convic­tions is within the discretion of the circuit court.  
Montgomery
, 47 Ill. 2d at 517-19.

In 
People v. Williams
, 161 Ill. 2d 1, 641 N.E.2d 296 (1994) (
Williams I
), the supreme court appeared to have eliminat­ed the first prong of the 
Montgomery
 test when it held that it was error to admit a defendant's conviction for voluntary manslaughter because this conviction did not relate to the defendant's credi­bil­ity.  In 
People v. Williams
, 173 Ill. 2d 48, 670 N.E.2d 638 (1996) (
Williams II
), however, the supreme court stated that 
Williams I
 did not change the 
Montgomery
 three-prong test.  The court in 
Williams I
I
 explained that the 
Williams I
 holding was based on the fact that the circuit court's comments showed that it had admitted the prior conviction as probative evidence and had failed to balance its probative value against the danger of unfair prejudice, as 
Montgomery
 requires.  
Williams II
, 173 Ill. 2d at 82.

After the 
Williams II
 court explained the 
Williams I
 hold­ing, it held that a murder defendant's prior conviction for aggravat­ed battery was properly admitted.  The defendant had argued that his prior conviction had no bearing on his credibility and was unduly prejudicial because it suggested that he had a propen­sity for violent behavior.  
Williams II
, 173 Ill. 2d at 80-81.  In upholding the admission of this evidence, however, the court reasoned that the record showed that the circuit court was aware of the 
Montgom­ery
 balancing test because the parties had referred to this test in their arguments.  Although the circuit court did not articulate its application of the balancing test, the supreme court found that there was no reason to believe that it had disregarded this standard.  
Williams II
, 173 Ill. 2d at 83.

In applying 
Williams II
, we conclude that defendant's voluntary man­slaugh­ter conviction was properly admitted in this case.  Like the defen­dant in 
Williams II
, defendant argues that his prior convic­tion was improperly admitted because it was unrelated to his credibil­ity and because it was highly prejudicial in that it was likely to cause the jury to think he had a propensity to commit violent crimes.  He also complains that the circuit court erred by failing to weigh the probative value of the conviction against its prejudicial effect. 

As in 
Williams II
, however, the record supports a conclu­sion that the circuit court in this case properly applied the 
Montgomery
 balancing test.  In fact, the evidence that the circuit court did so is stronger in this case than in 
Williams II
.  The circuit court in 
Williams II
 did not expressly state that it had balanced the probative value of the prior conviction against the danger of unfair prejudice.  In this case, however, the court did articulate its application of the 
Montgomery
 balancing test.   

We take this opportunity to stress, as other courts have done before, that the balancing test required by 
Montgom­ery
 is no mere formality and that trial judges should be explicit in their application of that test.  See, 
e.g.
, 
People v. Jennings
, 279 Ill. App. 3d 406, 409-11, 664 N.E.2d 699 (1996); 
People v. Bramlett
, 276 Ill. App. 3d 201, 207, 658 N.E.2d 510 (1995); 
People v. Elliot
, 274 Ill. App. 3d 901, 911-12, 654 N.E.2d 636 (1995).

Defendant also argues that it was error for the circuit court to admit testimony concern­ing the citizen's conversation with police because it was hearsay.  According to defen­dant, this testimony was not admissible to explain the course of the police investiga­tion because the police testified, not just to the fact of the conversa­tion, but also to its contents.  

A police officer may testify about conversa­tions with others to show the steps in his investigation so long as this testimony is not used to prove the truth of the matter asserted by these other persons.  
People v. 
Williams
, 274 Ill. App. 3d 598, 604-05, 653 N.E.2d 899 (1995).  In 
People v. Jones
, 153 Ill. 2d 155, 606 N.E.2d 1145 (1992), for example, the court held that the substance of police conversations with an out-of-court declarant was admissible to explain their actions.  In 
Jones
, the defendant was accused of robbing a woman as she entered her car and of stealing her car.  One police officer testified that, two nights after the robbery, he observed two men stripping the victim's car.  He and his partner apprehended one of the men, Frederick Colvin, but the other escaped.  The officer identified this man as the defendant, and it was clear from his testimony that Colvin was the source of his informa­tion as to the defendant's identity.  It was also clear from a detective's testimony that he had learned the defendant's name from speaking to Colvin.  
Jones
, 153 Ill. 2d at 159.  

Like defendant in the case before us, the defendant in 
Jones
 argued that the officer's and the detective's testimony was inadmis­si­ble because the police described the substance of the police conversa­tions with Colvin.  
Jones
, 153 Ill. 2d at 158-59.  The supreme court rejected this argument.  It explained that the substance of the police conversations with Colvin was not offered for its truth because it would prove only the defendant's involve­ment in the car strip­ping, not his involvement in the armed robbery.  The testimony concerning the conversations with Colvin, there­fore, was admissible because it showed only how the police came to suspect the defen­dant.  
Jones
, 153 Ill. 2d at 160-61.

Similarly, in 
People v. Williams
, 233 Ill. App. 3d 1005, 599 N.E.2d 1033 (1992), a police officer testified that a man named Hobart Buckner had told him that he had driven the defendant to a location a block from the murder victim's apartment and had left without the defendant after about 10 or 15 minutes.  
Williams
, 233 Ill. App. 3d at 1016.  This contra­dict­ed the defendant's statement to the detective that he had left with Buckner.  
Williams
, 233 Ill. App. 3d at 1008.  The court held that this testimony was admissible to explain why the detective had sought to interview the defendant again after previously receiving a plausible assertion of inno­cence.  
Williams
, 233 Ill. App. 3d at 1017.

In this case, the testimony concern­ing the substance of Elizondo's conversation with defendant was properly admitted to explain the steps of the officers' investiga­tion.  Without this testimony, it is likely that the jury would have been left with the impression that the officers stopped defendant for no apparent reason.  Given defendant's trial strategy of attacking the officers' credibility, it was particularly important for the State to offer evidence of the conversa­tion to explain the reason for the officers' actions.  Under these circumstances, the substance of the conversa­tion was not offered for its truth but to show why the officers acted as they did.  Admitting evidence of the conversation for this limited purpose was not a hearsay violation.  More­over, the circuit court properly informed the jury of the purpose of the evidence and instructed it not to consider the evidence as evidence of defendant's guilt.

In determining the admissibility of the conversation, it was the circuit court's responsi­bil­i­ty to weigh its prejudi­cial effect against its probative value.  Although the circuit court did not articulate this weighing process, its statement that the evidence was admissible to explain the actions of the police officers shows that it found that the probative value of the evidence outweighed its potentially prejudicial effect.  Under the circum­stanc­es of this case, where defendant made police credibil­ity a central issue at trial, we conclude that the circuit court's decision to admit the evidence was not erroneous.

Moreover, even if, 
arguendo
, the circuit court erred in admitting evidence of the conversation, such error would be harmless.  As the court stated in 
People v. Cordero
, 244 Ill. App. 3d 390, 392, 613 N.E.2d 391 (1993):

"The admission of hearsay is not reversible error if there is no reasonable probability that the jury would have acquitted the defendant if the hearsay testimony had been excluded [citation], such as where properly admitted evidence proves the same matter [citation], or there is overwhelming evidence of the defendant's guilt [cita­tion]."  

In this case, we believe that there is no reasonable probabil­ity that the jury would have acquitted defendant with or without the evidence of the contents of the conversation.  Both Stevenson and Elizondo testified that Elizondo found a gun in defendant's coat pocket, and Elizondo testified that he also found drugs in one of defendant's pocket.

Defendant contradicted this testimony, but his version of events lacked credibility.  He claimed that Elizondo did not recover a gun from him; as a matter of fact, he said that Elizondo did not even search him.  He admitted that an officer said, "look what I found," but said he did not know what the officer removed from his pocket.  He claimed that he never saw the drugs that were found, but this claim was contra­dicted by his testimony at the hearing on the motion to suppress that he saw the drugs at the station.  Defendant's claim that he was unaware of the contents of the coat because he had just purchased it for $10 was also unbelievable.   According to defendant, the previous owner needed money, yet he left 15 packets of cocaine in the coat he sold for $10.

Moreover, our harmless error analysis is supported by the jury's rejection of defendant's testimony and its acceptance of the testimony of the police officers.  If the jury had found defendant credible, it would have had no problem rejecting the testimony concern­ing the statements of the citizen.  That testimony merely explained the reason for the police con­duct, a highly relevant matter in this case, and we find no basis for concluding that the police officers' testimony was otherwise enhanced by the statements of the citizen.

Although we find that the admission of testimony concerning the contents of the conversation was not error, we are troubled by the State's use of this evidence in its final arguments.  The court admitted the evidence for the limited purpose of explaining the steps in the officers' investigation, yet the State used this evidence as substantive evidence of defendant's guilt.

In closing argument, the State said:

"You heard Officer Elizondo testify.  You remember he testified that when he was on patrol in the 3200 block of East 92nd Street, he was flagged down by a citizen.  That citizen he had a conversation with.  That citizen did not want to proceed any further.  The officer told you why he did not want to proceed any further.

He had just had a frightening altercation with this defendant.  This defendant stuck a gun in his face and threatened him.  

Although that citizen did not want to get involved, he still gave the officer very valuable information.  He named the defendant not only by his real name, but by his street name or his nickname.  He also gave a physical description of the defendant.  He also described the gun that the defendant pointed in his face.

***

And what does that patdown search of the defendant reveal?

This .38 caliber nickel-plated revolver, same gun that the citizen described.  Right from his right coat pocket, fully loaded, five live rounds."

In its rebuttal argument, the State also relied on the substance of the conversation to show defendant's guilt:

"Now isn't that queer?  That his nickname just happens to be the nickname that the citizen that came to the police said it was.

How else would the police know about the defendant's nickname if not from that citizen?

We know there was a real victim in this case, a real citizen who came to the police because we know the nickname, Bayman.  The defendant admitted it on the stand that is his nickname, the same name that that citizen gave the police."

By arguing in this manner, the State disregarded the limited purpose for which the circuit court had admitted the evidence of the substance of Elizondo's conversation with the citizen.  As the court stated in 
People v. White
, 192 Ill. App. 3d 55, 61, 548 N.E.2d 421 (1989):  "[T]he State's remarks here are an example of the recently recognized practice of prosecutors taking improper advantage of the admissibility of testimony by a police officer to explain his investigatory procedure, only to use that testimony, once it is admitted, to impermissibly use it in closing argument."  See also 
People v. Singletary
, 273 Ill. App. 3d 1076, 1085, 652 N.E.2d 1076 (1995); 
People v. Campbell
, 115 Ill. App. 3d 631, 637-38, 450 N.E.2d 1318 (1983).  We hold that the State's repeated references to this evidence in an effort to convince the jury of defendant's guilt was error.

Nevertheless, we believe that this error was harmless.  The credibility issues in this case were well defined.  As indicated previous­ly, if the jury believed defendant's testimo­ny, it would have rejected what the police said about the unidenti­fied citizen.  On the other hand, the jury's acceptance of the police testimony does not mean that it gave substantive weight to what the citizen said.  Because the evidence against defendant was over­whelm­ing (see 
People v. Batson
, 225 Ill. App. 3d 157, 166, 587 N.E.2d 549 (1992)), we do not believe that the arguments of the State constituted reversible error.

Defendant also urges us to find that another portion of the State's closing argument denied him a fair trial.  He claims that it was improper for the State to argue that its witnesses were more credible because they were police officers.  He also contends that it was error for the State to attempt to bolster its witnesses' credibil­ity by arguing that they risk their lives for people.  He relies on the following portions of the State's rebuttal argument:

"The question is, the only question is who is telling the truth.  Who do you believe?  Do you believe two dedicated Chicago Police Officers who put their lives on the line for us every night or do we believe Robert Williams here on his own behalf testifying on his own behalf, twice convicted felon?

***

And I don't want you to believe them because they're police, I want you to believe them because they're telling the truth.  There is no reason that came out during the cross-examination or the direct examination or any testimony that shows they're not telling the truth.

And they work hard every day to protect us.  They're out there every night to try to get this stuff off of the street for us.  Those people deserve our gratitude and the defendant deserves our scorn for making it so dangerous on the streets for us, for bringing this kind of violence on to the street.

[Defense counsel]:  Objection, this is made to inflame the emotions of the jury.

COURT:  Overruled."

The State argues that defendant waived this issue for review by failing to include it in his motion for a new trial.  At the end of the trial, defense counsel made an oral motion for a mistrial based on the State's closing argument, but when the circuit court asked which of the State's comments were improper, defense counsel responded that the State's comment that there was a "blight on the streets of guns and drugs" was improp­er because this had no connection to defen­dant.  Defendant's motion for a new trial contains no reference to closing arguments.

We agree with the State that defendant has waived this issue for review.  It is well established that, to preserve for review an objec­tion to comments in closing argument, a defendant must include the specific comments to which he objects in his post-trial motion.  See, 
e.g, People v. Robinson
, 238 Ill. App. 3d 48, 56, 606 N.E.2d 122 (1992).  In this case, defendant failed, not only to include specific comments in his post-trial motion, but he also failed to include any objection to the State's closing argument in this motion.

Waiver aside, we do not find error in the comments about which defendant now complains.  A prose­cu­tor has great lati­tude in making closing argu­ments, and a review­ing court will uphold the circuit court's determina­tion as to the propriety of this argu­ment absent an abuse of discre­tion.  
People v. Hine
, 88 Ill. App. 3d 671, 679, 410 N.E.2d 1017 (1980).  A prosecutor may comment on the evidence, draw legitimate inferences therefrom even if they are unfavorable to the defendant, and comment on the credi­bility of witnesses.  
People v. Johnson
, 149 
Ill. 2d 118, 145, 594 N.E.2d 253 (1992).  

As defendant argues, however, the State may not argue that a witness is more credible because of his status as a police officer.  
People v. Fields
, 258 Ill. App. 3d 912, 921, 631 N.E.2d 303 (1994).  It is also improper for the State to attempt to bolster the credi­bility of its police officer witnesses by commenting that these officers risk their lives every day for people like the jurors.  
People v. Montgomery
, 254 Ill. App. 3d 782, 795, 626 N.E.2d 1254 (1993).  

However, in review­ing the propri­ety of a partic­u­lar comment in closing argument, courts will consider that comment in the context of the entire closing arguments of both the State and the defendant (
People v. Moss
, 260 Ill. App. 3d 272, 281, 630 N.E.2d 850 (1993)), and a defen­dant may not claim preju­dice from a prose­cu­tor's comments when the defendant's earlier argument invited those comments (
People v. Rich­ardson
, 123 Ill. 2d 322, 356, 528 N.E.2d 612 (1988)). 

For example, in 
People v. Davis
, 228 Ill. App. 3d 835, 593 N.E.2d 766 (1992), the court held that comments similar to those at issue in this case did not deprive the defen­dant of a fair trial.  The defense had chal­lenged the officers' testimony by arguing that the jury did not need to believe something had happened just because an officer had said that it had.  The defense had also argued that, although not all police officers are bad, in this case, the police did not like the defendant.

The prose­cution then argued that the police officers would not risk their careers, their pensions, and their reputa­tions to frame the defendant.  It also argued that defense witnesses had a motive to lie because they were relatives or students of the defendant.  
Davis
, 228 Ill. App. 3d at 839.  

The 
Davis
 court held that the prosecution's comments did not deprive the defendant of a fair trial because they were a proper response to the defendant's trial strategy of attacking the credibil­ity of the police offi­cers.  
Davis
, 228 Ill. App. 3d at 840-41; see also 
People v. Brooks
, 214 Ill. App. 3d 531, 542, 573 N.E.2d 1306 (1991).

Similarly, in this case, defendant invited the prosecution's comments by making police credibility the central issue in the case.  In closing argument, for example, defense counsel argued:

"And if it doesn't make sense, then you have to doubt the veracity how the officer testified. And if the officer testified or lied and you don't believe him about one thing when he stood there under oath and testified, you have got to ask yourself, can I believe anything this officer says?

Doesn't hesitate to lie once under oath, he won't hesitate another time to lie under oath.

Look what is there.  Look what is not there and common sense tells you should be there."

As the court concluded in 
Davis
, we hold that the prosecution's comments in this case were not error because they were invited by the defense strate­gy of attacking the credibility of the police officers.  

Judgment affirmed.

TULLY, J., concurs.

JUSTICE McNULTY dissenting: 

The majority concludes that the testimony concerning the substance of Officer Elizondo's conversation with defendant was properly admitted to explain the steps of the officers' investiga­tion.  In reaching this conclusion, the majority notes that if this testimony had not been admitted, it would likely have left the jury with the impression that the officers stopped defendant for no apparent reason.  The majority finds significant the fact that the circuit court instructed the jury not to consider this evidence as evidence of defendant's guilt. 

For the following reasons, I disagree.  In explaining an officer’s investigatory procedure, the officer may testify that he spoke with a witness in order to gather information for his investigation and, after his conversation, he began looking for the defendant.  
People v. Pryor
, 181 Ill. App. 3d 865, 537 N.E.2d 1141 (1989).
  Under the investigative procedure exception, the officer’s testimony must be limited to show how the investigation was conducted, not to place into evidence the substance of an out-of-court statement or conversation for the purpose of establishing the truth of its contents.  
People v. Trotter
, 254 Ill. App. 3d 514, 626 N.E.2d 1104 (1993).
 

 The officers' testimony here went well beyond merely explain­ing their investigatory procedures and what prompted them to put defendant under surveillance.  In 
People v. Singletary
, 273 Ill. App. 3d 1076, 1082, 652 N.E.2d 1333 (1995), for example, the officer’s testimony that a confidential informant told him that defendant "was going to go to 2971 South Dearborn and pick up a package of cocaine," went beyond what was necessary to explain the officer’s conduct and improperly presented the substance of his conversation with the informant. See also 
Pryor
, 181 Ill. App. 3d 865, 537 N.E.2d 1141 (officer's testimony that a passing citizen flagged him down and stated that a black man who was 5 feet 7 inches tall, in his late twenties and wearing a dark, waist-length leather jacket attempted to sell the citizen marijuana, set forth the substance of the conversation with the citizen and was therefore inadmissible hearsay).

    In the instant case, Officer Elizondo could have testified that he had a conversation with the citizen and that the informa­tion he received from the citizen prompted him to put defendant under surveillance.  However, Officer Elizondo improperly testified to the substance of his conversation with the citizen when he testified that the citizen told him that he had just had an encounter with a man who pointed a gun at him and told him to "pay up his debt or else," and that the man was named Robert Williams and nicknamed Bayman.  Furthermore, Officer Stevenson's testimony that Officer Elizondo "called for a meet in regard to the man that supposedly had a gun and threaten[ed] another individual," not only impermissibly testified to the substance of Officer Elizondo’s conversation with the citizen, but was also double hearsay as to what Officer Elizondo had told Officer Stevenson.  The details provided by the officers were not necessary to explain the officers' actions but, instead, served to bolster the officers' testimony implicating defendant.

The majority notes that even if the circuit court erred in admitting evidence of the conversation, any error was harmless, since the circuit court instructed the jury on the limited use of this testimony and the evidence against defendant was overwhelm­ing. The circuit court informed the jurors that the testimony as to the conversation between the defendant and the citizen was being admitted for the limited purpose of showing the police officer’s conduct and that it should not be considered by them in determining defendant's guilt.  However, the majority acknowledges that in closing argument, the State disregarded the limited purpose for which the evidence of Officer Elizondo's conversation with the citizen had been admitted and used it as substantive evidence of defendant's guilt.  See 
Singletary
, 273 Ill. App. 3d at 1085.  Therefore, if the court's limiting instruction had any vitality when the conversation was initially offered, it later was vitiated by the prosecutor's use of it as substantive evidence in closing argument.  

    I also disagree with the majority's conclusion that the evidence against defendant was overwhelming.  A substantial portion of the State's evidence concerned the substance of Officer Elizondo's conversation with the confidential informant.  Without this evidence bolstering the officers' testimony, the case is much closer.  

Moreover, I disagree with the majority's finding regarding  the prosecutor's comment in rebuttal closing argument about the credibility of the police officers.  After making a lengthy comment regarding the officers who "put their lives on the line for us every night" and "work hard every night to protect us," the prosecutor concluded his argument by informing the jurors that the officers deserve our gratitude.  These comments, although not specifically raised in defendant's post-trial motion, amount to plain error.  The prosecutor's comments improperly bolstered the credibility of the police officers and attempted to arouse the jurors' passions.  
People v. Threadgill
, 166 Ill. App. 3d 643, 520 N.E.2d 86 (1988) (the prosecutor improperly attempted to arouse the fears and prejudices of the jurors by commenting that the police officers are out there trying to protect the jurors and their families and the jurors could either send the officers a message that they back them up or they could turn their backs on them);  
People v. Montgomery
, 254 Ill. App. 3d 782, 626 N.E.2d 1254 (1993) (the prosecutor improperly commented that the jurors can have faith in the system because police officers go out every day and risk their lives for people like the jurors). 

The majority concludes that the prosecutor’s comments in rebuttal closing argument were permissible since defendant invited the prosecution's comments by making credibility the central issue in the case.  Although defense counsel questioned the credibility of the police officers, counsel did so through use of the evidence presented at trial.  While the prosecutor, in turn, was entitled to discuss why the police officers were more credible than defendant, he should have done so by discussing the evidence at trial, not by arguing that the officers should be believed because they put their lives in danger to protect people. 

I find that the cumulative impact of these errors denied defendant a fair trial.  Accordingly, for the foregoing reasons, I respectfully dissent.