No. 03-07-0259

Filed May 16, 2008

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2008

| THE PEOPLE OF THE STATE OF ILLINOIS | ) | Appeal from the Circuit Court |
|---|---|---|
| | ) | for the 12th Judicial Circuit, |
| | ) | Will County, Illinois, |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | 06-DT-1869 |
| | ) | |
| DANIEL GARSTECKI, | ) | |
| | ) | Honorable Sarah Jones |
| Defendant-Appellant. | ) | Judge, Presiding. |
| | ) | |

PRESIDING JUSTICE McDADE delivered the opinion of the court:

Defendant, Daniel Garstecki, was convicted of driving a vehicle while under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2006)) by a jury in the circuit court of Will County. Defendant raises as issues for review whether (1) the circuit court committed reversible error when it refused to permit defendant to directly question prospective jurors; and (2) defendant was proven guilty beyond a reasonable doubt. We affirm.

FACTS

The record indicates that in the early morning hours of October 19, 2006, Lockport police officer Vince Vitacco arrested defendant for driving under the influence of alcohol. The reports filed by the officer reflected that defendant emitted an odor of alcohol, had glassy, bloodshot eyes and failed the field-sobriety tests which were given to him. Defendant subsequently refused

Vitacco's request to submit to chemical testing to determine blood alcohol content. Consequently, defendant was informed that his driving privileges would be suspended in 46 days, and this information was later confirmed in a letter to him from the Secretary of State.

Prior to trial, defendant filed a motion requesting that defense counsel be allowed to pose oral questions to the jury venire. Defendant's reasoning was that jurors are less intimidated by questions from counsel as opposed to questions from a trial judge. At the hearing on defendant's motion, the circuit court inquired into what questions defendant wanted to personally ask the prospective jurors. Defendant stated that he wanted to ask two specific questions concerning: (1) whether any prospective juror had any personal beliefs regarding the consumption of alcohol and the operation of a motor vehicle; and (2) whether any prospective juror would view a police officer's testimony as more credible than an ordinary citizen. The court subsequently denied defendant's motion on the grounds that it was already going to ask defendant's proposed questions and that the nature of the charges and the legal issues involved were not complicated or complex. The court advised defendant, however, that he could proffer written questions, which it would then ask the prospective jurors.

Defendant submitted two questions to the court for further inquiry of the prospective jurors. The two questions related to any personal beliefs regarding the consumption of alcohol and whether any of the potential jurors had donated any money to anti-drunk-driving organizations, such as Mothers Against Drunk Driving, or advocated for a change in the DUI laws. The court then began the *voir dire* process by informing the venire about the nature of the case, the names of the parties and their counsel, and the names of potential witnesses. The court proceeded, explaining to the venire that defendant is presumed innocent of the charge against

2

him, that before defendant can be convicted the State must prove him guilty beyond a reasonable doubt, that defendant is not required to offer any evidence on his behalf, and that defendant's failure to testify cannot be held against him.

After informing the venire of the applicable law, the court then began its own individual questioning of the prospective jurors. The court asked each juror whether he or she had any personal beliefs regarding the consumption of alcohol, whether he or she had any friends or relatives in law enforcement or the prosecutor's office, and whether he or she donated money to anti-drunk-driving organizations or advocated for any change in the DUI laws. If a prospective juror answered any of these questions in the affirmative, the court asked further questions to uncover the nature and extent of the belief or relationship. The court then asked whether that belief or relationship would prevent the prospective juror from giving the parties a fair trial. Upon the conclusion of the general *voir dire*, the court permitted additional questioning of some potential jurors by defendant. While defendant was allowed to select which jurors he wanted to pose additional questions to, his request to ask additional questions to the entire venire was denied.

Upon the empaneling of the jury, the matter proceeded to trial. The State called two witnesses, Officers Vince Vitacco and Joe Dziatkiewicz. Vitacco testified that he has been trained to identify behavior evidencing driver intoxication. He indicated that he had been a police officer for five years and had processed approximately 20 DUIs during that time. Vitacco testified that on October 19, 2006, he observed defendant's vehicle traveling northbound on State Street in Lockport Village. Vitacco testified that he observed defendant's vehicle swerve back and forth between the two lanes on his side of the concrete median. Vitacco activated his video

3

camera and emergency lights. The video was admitted into evidence and played for the jury.

After Vitacco initiated a traffic stop, he noted that defendant had an odor of alcohol on his breath and his eyes were bloodshot and glassy. Vitacco asked defendant if he had been drinking and defendant replied that he had had a "couple beers." Vitacco requested defendant to perform some field sobriety tests. Defendant consented. Vitacco conducted four tests. The first test was the horizontal gaze nystagmus (HGN) test. Vitacco testified that he explained how to perform the HGN test to defendant. Vitacco administered the test by moving a pen from side-to-side at defendant's eye level. Vitacco testified that defendant's eyes jerked while following the pen and when they were at maximum deviation, which led him to believe that defendant was under the influence of alcohol.

The next test was the walk-and-turn test. During the test, defendant missed some heel-to-toe steps, used his arms for balance, and stepped off the line. The next test was the one-leg-stand test. Vitacco instructed defendant to place his legs together with his arms at his side and then raise his right leg in the air and count to 30. During the test, defendant almost fell over, put his foot down several times, and used his arms for balance. For the final test, Vitacco instructed defendant to recite the alphabet from the letter B to Z without singing it. Defendant recited the alphabet correctly; however, he did sing it.

Based on the results of these tests, Vitacco believed defendant was under the influence of alcohol and not fit to operate a motor vehicle. Vitacco subsequently arrested defendant and took him to the police station for processing. Vitacco requested defendant to submit to chemical testing to determine blood alcohol content, but defendant refused.

Officer Joe Dziatkiewicz testified that he had been a Lockport police officer for over

4

three years and had also been trained to identify behavior evidenced by intoxicated drivers. Dziatkiewicz stated that he assisted Vitacco in conducting the traffic stop. Dziatkiewicz corroborated Vitacco's testimony and opined that defendant was under the influence of alcohol.

Defendant presented no evidence and did not testify on his own behalf. The jury subsequently found defendant guilty of driving a vehicle while under the influence of alcohol. The circuit court denied defendant's motion for a new trial. Defendant filed a timely notice of appeal.

ANALYSIS

On appeal, defendant first argues that the circuit court committed reversible error when it refused to permit defendant's attorney to directly question prospective jurors. To resolve this issue, we must interpret whether Supreme Court Rule 431 (177 Ill. 2d R. 431), which governs *voir dire* examination of jurors in criminal trials, requires that the circuit court allow the parties to pose oral questions to prospective jurors during *voir dire.* We interpret supreme court rules the same way we interpret statutes: *de novo*, giving the language of the rule its plain meaning. *People v. Hinton*, 362 Ill. App. 3d 229, 232, 839 N.E.2d 124, 126 (2005).

Prior to 1997, Rule 431 provided that *voir dire* examination of jurors in criminal trials would be conducted in accordance with its civil companion Supreme Court Rule 234 (177 Ill. 2d R. 234). Prior to 1997, Rule 234 stated as follows:

> "The court shall conduct the *voir dire* examination of
> prospective jurors by putting to them questions it thinks
> appropriate touching their qualifications to serve as jurors in the
> case on trial. The court may permit the parties to submit additional

5

questions to it for further inquiry if it thinks they are appropriate, or *may permit the parties to supplement the examination by such direct inquiry as the court deems proper.* Questions shall not directly or indirectly concern matters of law or instructions. The court may acquaint prospective jurors with the general duties and responsibilities of jurors." (Emphasis added.) 103 Ill. 2d R. 234.

Effective May 1, 1997, Rule 431 was amended. Rule 431 as amended, now states as follows:

"(a) The court shall conduct *voir dire* examination of prospective jurors by putting to them questions it thinks appropriate, touching upon their qualifications to serve as jurors in the case at trial. The court may permit the parties to submit additional questions to it for further inquiry if it thinks they are appropriate and *shall permit the parties to supplement the examination by such direct inquiry as the court deems proper for a reasonable period of time depending upon the length of examination by the court, the complexity of the case, and the nature of the charges.* Questions shall not directly or indirectly concern matters of law or instructions. The court shall acquaint prospective jurors with the general duties and responsibilities of jurors.

\*\*\*

6

(b) [T]he court shall ask each potential juror, individually or in a group, whether the juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charges against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects.

The court's method of inquiry shall provide each juror with an opportunity to respond to specific questions concerning the principles set out in this section." (Emphasis added.) 177 Ill. 2d R. 431.

In arguing that the circuit court committed reversible error when it refused to permit defendant's attorney to directly question prospective jurors, defendant calls our attention to the fact that the amended Rule 431 provides that the court "shall" rather than "may" permit the parties to supplement the *voir dire* examination. Defendant relies upon *Grossman v. Gebarowski*, 315 Ill. App. 3d 213, 732 N.E.2d 1100 (2000), for the proposition that Rule 431 requires that the circuit court allow the parties to pose oral questions to prospective jurors during *voir dire*. The State, relying upon *People v. Allen*, 313 Ill. App. 3d 842, 730 N.E.2d 1216 (2000), counters by asserting that the circuit court acted within its discretion when it denied defendant's

7

request to directly question the jury venire.

The *Allen* court examined both the original and amended versions of Rule 431 to determine if the use of the term "shall" in the amended version required the circuit court to allow the parties to directly question prospective jurors. The court construed the term "shall" as directory and not mandatory. Specifically, the court stated:

> "[w]e conclude that the portion of Rule 431 providing that the court "shall" permit the parties to ask questions directly of prospective jurors is directory in nature. However, that does not end our inquiry.
>
> The fact that the supreme court saw fit to replace "may" with "shall" indicates that the supreme court intended to effect a change in how a trial court exercises its discretion in ruling on attorneys' requests to directly question jurors. Prior to the 1997 amendment, the rule merely authorized direct inquiry of jurors by attorneys; the trial court's discretion was unfettered in determining whether it would permit such questioning. Under the amended Rule 431, however, the trial court is to exercise discretion in favor of permitting direct inquiry of jurors by attorneys, subject to the factors set forth in the rule.
>
> Therefore, we conclude that Rule 431 does not create an absolute right of attorneys in every case to ask questions directly of prospective jurors. It does, however, require that a trial court

8

exercise its discretion in favor of allowing an attorney's direct questioning of prospective jurors in accordance with the factors listed in Rule 431." *Allen*, 313 Ill. App. 3d at 847, 730 N.E.2d at 1221.

The court in *Allen* determined that the circuit court abused its discretion in denying defendant's request to directly question the jury venire. Specifically, the court stated:

"In this case, the trial court did not comply with Rule 431. When asked by the defense counsel for a reasonable period of time within which to ask questions directly of the prospective jurors, the trial court merely responded that it did not feel that it was necessary in a case of this nature. The trial court's rather abbreviated comment gave no indication that it had, in fact, considered the complexity of the case or the nature of the charges in determining to deny the defense attorneys the right to question the prospective jurors directly. Nor did the trial court question the defense attorneys as to the potential questions or areas of questioning they would pursue in questioning the jury. Finally, at the time the trial court denied the attorneys the right to question the jurors directly, it had not yet commenced its own questioning and had not indicated to the attorneys that its questioning would be so lengthy or so thorough as to preclude their questioning of the prospective jurors." *Allen*, 313 Ill. App. 3d at 847, 730 N.E.2d at

9

1221.

The *Grossman* court examined not Rule 431 but its civil companion, Rule 234. Rule 234, which governs the *voir dire* examination of jurors in civil proceedings also states that the trial court "shall" permit the parties to supplement the examination. (177 Ill. 2d R. 234). In finding that the circuit court erred in refusing to allow counsel to directly question the jury venire, the *Grossman* court rejected the *Allen* court's holding that the term "shall" should be construed as directory and not mandatory. *Grossman*, 315 Ill. App. 3d at 221, 732 N.E.2d at 1106. Specifically, the court stated:

> "In view of the manner and context in which Rule 234 was amended, it is evident to us that the supreme court intended a mandatory construction of 'shall.' Prior to amendment, the rule specified that the trial court 'may' permit counsel to ask questions through the court. Accordingly, the court had the discretion to permit counsel to ask oral questions. [Citation.] The drafters, in amending the rule, changed the permissive verb may to shall, and the supreme court adopted the rule. Accordingly, under the rule as amended, the trial court must now allow counsel a reasonable opportunity to supplement the trial court's own direct inquiry by counsels' own direct oral inquiry. In the instant case, therefore, we find that the trial court erred in not permitting plaintiff's counsel an opportunity to supplement the court's *voir dire* examination with his own direct oral questions.

10

We are aware that our colleagues in the Second District, in the case of *People v. Allen*, 313 Ill. App. 3d 842, [730 N.E.2d 1216 (2000)], construed amended Rule 431 (177 Ill. 2d R. 431), which incorporates amended Rule 234, and acknowledged the general rule concerning the verb shall but nonetheless interpreted shall to be directory. [Citation.] We cannot, however, construe shall in the context of amended Rule 234 as other than mandatory."

*Grossman*, 315 Ill. App. 3d at 221, 732 N.E.2d at 1106.

The court in *Grossman* determined that the trial court's denial of defendant's request to directly question the jury venire constituted prejudicial error. Specifically, the court stated:

"In the instant case, plaintiff raises numerous case-specific questions that the trial court failed to ask and argues that the trial court failed to conduct *voir dire* sufficient enough to identify jurors entertaining a bias against a pedestrian who crosses a street at a place other than an intersection or marked crosswalk and to provide enough information to enable plaintiff to use her peremptory challenges. We agree. The trial court merely posed a general question to the jurors regarding whether they or a family member or close friend had been involved in an accident. A question should not depend upon the prospective juror to volunteer information that does not fall within the question's scope. [Citation.] The trial court here erred in not allowing counsel to

11

participate in the *voir dire*, and we cannot conclude with certainty that the trial court's limited *voir dire* examination was sufficient enough to ensure an impartial jury and that the verdict would not have changed had plaintiff's counsel participated in the *voir dire*, as he was entitled to do. Accordingly, plaintiff is entitled to a new trial." *Grossman*, 315 Ill. App. 3d at 222, 730 N.E.2d at 1107.

Upon review, we find the reasoning in *Grossman* persuasive and thus interpret Rule 431 as giving the parties an absolute right to ask questions directly of prospective jurors limited only by reasonable restrictions of scope and time. In so holding, we reject the reasoning announced in *Allen*. We also reject the State's argument that *Grossman* is distinguishable because it dealt with Rule 431's civil companion, Rule 234. First, the only actual difference between the two rules is that Rule 431 contains, in subsection (b), the additional requirement that the circuit court give certain "cautionary instructions" to the jurors concerning the applicable standard of proof in a criminal trial, the presumption of innocence, and the defendant's fifth amendment rights -- issues that are unique to criminal trials. The *voir dire* examination provisions in the rules are identical. See 177 Ill. 2d Rs. 234, 431. Second, we decline to find that the supreme court intended to provide greater rights for individuals protecting their property than those protecting their lives and liberty.

While we recognize that Rule 431 does contain the language "as the court deems proper," we do not read this language to grant the circuit court discretion to reject counsel's request to supplement the court's own direct inquiry. Instead, such language merely grants the court discretion to curtail the scope and duration of counsel's supplementation if the court believes

12

counsel's questions to the prospective jurors are inappropriate or the time being taken is unwarranted. Again, Rule 431 states that the court may permit the parties to submit additional questions to it for further inquiry if it thinks they are appropriate and shall permit the parties to supplement the examination by such direct inquiry as the court deems proper. See 177 Ill. 2d R. 431.

Our supreme court has held that the rules of statutory construction apply with equal force to the interpretation of all Illinois Supreme Court rules. *In re Estate of Rennick*, 181 Ill. 2d 395, 404, 692 N.E.2d 1150, 1155 (1998). One of the primary rules of statutory construction requires that a statute be construed according to its plain language and should not be interpreted in a fashion that renders its terms meaningless or superfluous. *People v. Jones*, 168 Ill. 2d 367, 375, 659 N.E.2d 1306, 1309 (1995). To hold that the court has discretion to reject altogether counsel's request to supplement the court's own direct inquiry would render the term "shall" meaningless and superfluous. We therefore find that the circuit court must allow a party's request to directly question prospective jurors. Upon granting this request, the court may then exercise its discretion in governing the scope and duration of counsel's supplementation. In this case, the circuit court failed to comply with Rule 431 when it refused to permit defendant to directly question prospective jurors. However, this does not end our inquiry. The question that remains is whether the error requires reversal.

Upon determining that the circuit court had erred in denying defendant's request to directly question prospective jurors, the *Grossman* court examined whether such error was sufficiently prejudicial to warrant a new trial. Our supreme court, however, has directed that all of the Illinois Supreme Court rules are mandatory rules of procedure, not mere suggestions.

*People v. Houston*, 226 Ill. 2d 135, 153, 874 N.E.2d 23, 34 (2007). Based upon this generally accepted rule of law, it would appear that we are required to reverse defendant's conviction irregardless of whether prejudice has resulted from the circuit court's failure to comply with Rule 431. The *Houston* court's ultimate disposition, however, failed to give full effect to this principle.

The defendant in *Houston* alleged that his trial counsel was ineffective for waiving the court reporter during *voir dire.* The supreme court found that defense counsel's performance was deficient because counsel's waiver violated Illinois Supreme Court Rule 608(a)(9) (210 Ill. 2d R. 608(a)(9)). *Houston*, 226 Ill. 2d at 148, 874 N.E.2d at 31-32. Rule 608(a)(9) provides that in cases where a sentence of death is not imposed:

> "[T]he court reporting personnel *** shall take the record
> of the proceedings regarding the selection of the jury, but the
> record need not be transcribed unless a party designates that such
> proceedings be included in the record on appeal." 210 Ill. 2d R.
> 608(a)(9).

While the court specifically directed that the Illinois Supreme Court rules must be obeyed and enforced as written, the court went on to remand the case to the circuit court with directions to hold a hearing to reconstruct the *voir dire* record so that defendant's claim of prejudice could be examined further. *Houston*, 226 Ill. 2d at 152-53, 874 N.E.2d at 34. Merely remanding the matter for reconstruction, however, does not enforce the mandatory requirement that the proceedings be recorded by a court reporter. See 210 Ill. 2d R. 608(a)(9). The only way the supreme court could have ensured that the proceedings were recorded by a court reporter was if it

14

reversed and remanded the matter for a new trial. Thus, it would appear that the court's analysis presents us with an inherent conflict as to the mandatory nature and effect of the Illinois Supreme Court rules. Without resolution of this conflict, we are left in a quandary as to whether a violation of an Illinois Supreme Court rule requires a new proceeding whereby the rule can be enforced irregardless of the prejudicial effect of such violation, or whether a violation of an Illinois Supreme Court rule must be examined in the context of the particular facts of each individual case. See *Houston*, 226 Ill. 2d at 152, 874 N.E.2d at 34.

Because the *Houston* court decided to forego giving full effect to the principle regarding the mandatory nature of the Illinois Supreme Court rules, we follow the procedure employed in *Grossman* whereby the court examined whether a Rule 431 violation was sufficiently prejudicial to warrant a new trial. Specifically, the court determined that the circuit court's error mandated reversal due to the fact that the court's direct examination was insufficient to identify jurors entertaining a bias. See *Grossman*, 315 Ill. App. 3d at 222, 730 N.E.2d at 1107. Our review of the record here, however, satisfies us that the circuit court's direct examination was sufficient to ensure an impartial jury and that the verdict would not have changed had defendant participated in the *voir dire*, as he was entitled to do.

During the hearing on defendant's motion, the circuit court stated it was already going to ask the questions defendant wished to ask. The court informed the parties, however, that they could proffer written questions, which, upon submission, it asked the prospective jurors. The record reveals that the court thoroughly inquired into all the areas defendant wished to pursue. Specifically, whether any prospective juror had any personal beliefs regarding the consumption of alcohol, whether any prospective juror would view a police officer's testimony as more

15

credible than that of an ordinary citizen, and whether any prospective juror donated money to anti-drunk-driving organizations or advocated for any change in the DUI laws. If a prospective juror answered any of these questions in the affirmative, the court asked further questions to uncover the nature and extent of the belief or relationship. The court then asked whether that belief or relationship would prevent the prospective juror from giving the parties a fair trial. With these facts in mind, we conclude that the circuit court's error of not allowing defendant to directly question prospective jurors was not so prejudicial as to warrant the granting of a new trial.

We now turn our attention to defendant's contention that the State failed to prove beyond a reasonable doubt that he was under the influence of alcohol. Defendant argues that the jury merely found him guilty because he refused to submit to chemical testing. A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276-77 (1985). When presented with a challenge to the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979); *People v. Ramsey*, 205 Ill. 2d 287, 292, 793 N.E.2d 25, 29 (2002).

The evidence which supported the jury's finding that the defendant was under the influence of alcohol was as follows: (1) defendant's vehicle was observed swerving and crossing over the lane barrier on two occasions; (2) defendant had a strong odor of alcohol on his breath; (3) defendant's eyes were glassy and bloodshot; (4) defendant admitted that he had consumed a

16

"a couple beers", (5) defendant failed three field sobriety tests;[1] (6) Officer Vitacco believed defendant was under the influence of alcohol and not fit to operate a motor vehicle; (7) Officer Dziatkiewicz corroborated Vitacco's testimony and also opined that defendant was under the influence of alcohol; and (8) defendant refused to submit to chemical testing. A defendant's refusal to submit to chemical testing is relevant circumstantial evidence of his consciousness of guilt. *People v. Garriott*, 253 Ill. App. 3d 1048, 1052, 625 N.E.2d 780, 784 (1993); *People v. Edwards*, 241 Ill. App. 3d 839, 843, 609 N.E.2d 962, 966 (1993). We find that the evidence presented at trial was sufficient to allow a rational trier of fact to find defendant guilty beyond a reasonable doubt of the offense of driving while under the influence of alcohol. See *Jackson v. Virginia*, 443 U.S. at 319, 61 L. Ed. 2d at 573, 99 S. Ct. at 2789.

Accordingly, the judgment of the circuit court of Will County is affirmed.

Affirmed.

HOLDRIDGE and LYTTON, JJ., concur.

---

[1] We disregard the results of horizontal gaze nystagmus test for the reasons articulated in *People v. McKown*, 226 Ill. 2d 245, 875 N.E.2d 1029 (2007).