2019 IL App (4th) 160217

NO. 4-16-0217

FILED
January 22, 2019
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Macon County |
| WILLIAM E. DAY, | ) | No. 15CF1123 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | James R. Coryell, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court, with opinion.
Justices Knecht and Turner concurred in the judgment and opinion.

**OPINION**

¶ 1   A jury found defendant, William E. Day, guilty of driving under the combined influence of alcohol and cannabis (625 ILCS 5/11-501(a)(5) (West 2014)) and driving while his driver's license was revoked (*id.* § 6-303(d-2)). The Macon County circuit court sentenced him to concurrent terms of imprisonment.

¶ 2   Defendant appeals on five grounds.

¶ 3   First, he argues that the evidence is insufficient to support the convictions. Our deferential standard of review compels us to disagree.

¶ 4   Second, defendant claims that the prosecutor committed plain error by repeatedly attempting to introduce hearsay in the teeth of multiple sustained objections. The transcript of the jury trial does not bear out that claim.

¶ 5　　　　Third, defendant complains that the circuit clerk imposed fines upon him that the trial court never imposed in its sentence. We cannot legitimately take cognizance of the clerk-imposed fines since they can be found only in a "Payment Status Information" sheet, a document that (contrary to our earlier ruling, which we rescind) does not belong in the common-law record.

¶ 6　　　　Fourth, defendant claims he is entitled to an additional day of presentence credit—and in his petition for rehearing, he reminds us of that claim. We hold that the doctrine of invited error bars defendant from claiming, on appeal, an additional day of presentence credit.

¶ 7　　　　Fifth, just as defendant claims he is entitled to an additional day of presentence credit, he claims that, for the same day, he is entitled to an additional $5 of monetary credit against his fines—a claim he reiterates in his petition for rehearing. We hold that the doctrine of invited error likewise bars that claim. And, besides, apart from invited error, defendant fails to establish from the record that he was incarcerated on the day for which he claims the additional $5 of monetary credit. Being incarcerated, not merely being in custody, is the statutory condition of the monetary credit.

¶ 8　　　　We affirm the judgment, and we deny defendant's petition for rehearing from our prior order, which also affirmed the circuit court judgment.

¶ 9　　　　　　　　　　　　I. BACKGROUND

¶ 10　　　　　　　　　A. The Jury Trial (January 20-21, 2016)

¶ 11　　　　　　　　　　1. *The Testimony of Joseph Herbert*

¶ 12　　　　On September 8, 2015, at about 9 p.m., a Macon County deputy sheriff, Joseph Herbert, drove his squad car to the intersection of Kruse Road and Illinois Route 121, south of Mt. Zion, Illinois, to investigate a reported single-vehicle accident.

¶ 13            At the southeast corner of the intersection, a black 1975 Chevrolet pickup truck had come to rest. Herbert took photographs. The truck had "front[-]end damage to the middle grill, bumper region," as if it had "struck a tree or pole or something of that nature," and leaves were entangled in the grill. The engine was off, but the headlights were still on, and the key was in the ignition. Nobody was in the truck or anywhere in sight. "On the driver's seat floorboard[,] there was a black cell phone and one orange flip-flop."

¶ 14            About three-quarters of a mile north, in the 5400 block of Kruse Road, a camper, or "topper," was on the ground. It had sustained "extensive damage to the front." "[O]nce it became separated from the vehicle," it had "more or less collapsed on itself." Herbert inferred that the 5400 block of Kruse Road was the "original accident scene"—he found the tree that the truck apparently had struck—and that, "[a]fter the camper became separated from the vehicle, the vehicle continued [south] from the accident scene."

¶ 15            About 57 minutes after Herbert arrived at the scene, a call came in from a third party, requesting a welfare check of "a white male" who was walking south on Illinois Route 121, south of Herbert's location. Herbert sent another deputy sheriff, Shane Wendell, to check on that man and make sure he was all right. After a while, Wendell returned with defendant, whose last known address was 1770 East Locust Street, Decatur, Illinois, about six to eight miles away from the intersection of Kruse Road and Illinois Route 121.

¶ 16            Defendant had "red bloodshot eyes." He was shoeless, and his bare feet were muddy. A "strong odor of [an] alcoholic beverage [was] coming from his breath," and he "sway[ed] [from] side to side" as Herbert talked with him. Wendell handed Herbert "a small white tin," which Wendell had "located on [defendant] prior to transporting him back to [the] scene." Inside the tin was a "[s]mall amount of green leafy substance," which field tested

positive for cannabis. Defendant admitted to Herbert that, before the accident, he "consumed beer and smoked cannabis."

¶ 17        Because defendant appeared to have a cut on his upper lip, Herbert asked him if he had suffered any injury in the accident. Defendant answered no and explained that the sore on his upper lip was herpes, which he had caught, he said, from prostitutes. Herbert asked him if he had been the driver. Defendant answered he had not. He said that, instead, his friend Buddy Young had been the driver and that, after the accident, Young had chosen to walk north on Illinois Route 121 whereas he, defendant, had chosen to walk south. Defendant was unable, however, to provide any description of Young other than to say he was "a black male." Herbert asked defendant how long he had known Young. Defendant answered he did not know. Herbert asked defendant where Young could be located. Defendant again answered he did not know.

¶ 18        The prosecutor asked Herbert:

"Q. Did you ask him about the cell phone that was located inside the vehicle?

A. Yes, ma'am.

Q. What was his response to that?

A. He said it was his phone.

Q. Did you ask him about the shoe that was found inside the vehicle?

A. Yes, ma'am.

Q. And what was his response?

A. He said it was his flip—shoe."

¶ 19        Herbert requested defendant to undergo a field sobriety test. He refused. Herbert then arrested him for driving under the influence (DUI) and for leaving the scene of an accident.

¶ 20        Herbert "turned the video camera around and filmed [defendant] on the way to jail." It appeared from the video footage that defendant now and then leaned over against the interior of the squad car and fell asleep.

¶ 21        In the jail, before asking defendant to undergo chemical testing to measure his blood alcohol content—a request that defendant ultimately refused—Herbert was required to read to him a warning of the penalties he would incur should he refuse to undergo the test. Herbert testified: "He bec[a]me belligerent, was screaming over me when I was trying to advise him. And at one point he stood up and took an aggressive posture, and I thought we [were going to] fight." Herbert called the jail sergeant, Kristopher Thompson, to come in and stand nearby so that he, Herbert, would not be attacked.

¶ 22        Herbert had been a deputy for the Macon County Sheriff's Department since 2005 and "probably [had] encountered hundreds of intoxicated people while at work." In his opinion, defendant was intoxicated that night.

¶ 23        On cross-examination, Herbert testified that potential inmates first were brought to the sally port of the county jail. The sally port was a large garage with a garage door on each end. Then they were brought into the prebooking area, or if they were suspected of DUI, they were required to wait for 20 minutes in the DUI processing room. State rules of procedure for DUI testing required that before administering a breath test to an arrestee, the arrestee had to be observed for 20 minutes to ensure the arrestee did not vomit or eat anything during that 20-minute period.

¶ 24                        2. *The Testimony of Shane Wendell*

¶ 25        On September 8, 2014, at about 10:04 p.m., Wendell saw a man walking south on Illinois Route 121, about a mile south of the accident site. It was defendant. Defendant told

Wendell who he was, and he presented a state identification card. Defendant was wearing no shoes, and he appeared to be "highly intoxicated": his breath smelled like alcohol, and his speech was slurred. In defendant's "left front pocket," Wendell found "a white cannister," which contained a "substance *** that had the odor and appearance of cannabis." Wendell "took him back to the scene of the accident," Illinois Route 121 and Kruse Road.

¶ 26                                3. *The Testimony of Kristopher Thompson*

¶ 27        On September 8, 2015, around 11:55 p.m., when Kristopher Thompson was on duty as "an administrative sergeant" "in charge of the third shift jail," Herbert "requested assistance because [an] arrestee was causing him some trouble." The arrestee was defendant.

¶ 28        In his job, Thompson saw intoxicated people every night, and in his opinion defendant was "extremely intoxicated." He was combative, belligerent, and aggressive, and he was not following commands.

¶ 29                                4. *The Sustained Objections to Herbert's Testimony*
                                   *Regarding the Registered Ownership of the Truck*

¶ 30        The prosecutor asked Herbert on direct examination:

"Q. What did you do to try to figure out who the driver [of the pickup truck] was?

A. I ran their license plate through M.S.O. dispatch[,] and they advised it checked back to two individuals.

MR. REUTER [(DEFENSE COUNSEL)]: Objection, Your Honor.

THE COURT: Hearsay. Sustained."

¶ 31        Later in her direct examination, the prosecutor asked Herbert whom Wendell brought with him to the scene of the accident. Herbert answered:

A. One of registered owners of the vehicle, [defendant].

MR. REUTER: Objection, Your Honor. You want us to approach, or—

THE COURT: I'm going to ask them to disregard the registered owner part of this and say he brought back [defendant]."

¶ 32       On redirect examination, the prosecutor asked Herbert:

"[MS. COURI (PROSECUTOR)]: When Deputy Wendell located an individual by the name of William Day, why did you ask that he be transported back to your scene?

A. The vehicle checked to William Day.

MR. REUTER: Objection, Your Honor.

MS. COURI: Your Honor, I would argue that that is not offered for the truth of the matter asserted, but why he was proceeding in the investigation in the manner he did.

THE COURT: I think the evidence we have is that he was brought back. I'm going to leave it at what we have. We have evidence that he was brought back. So[,] sustained."

¶ 33                                          5. *Exhibits Admitted*

¶ 34       The trial court admitted the photographs Herbert had taken of the truck and the camper (People's exhibit No. 1) and the package of cannabis (People's exhibit No. 2) but decided not to send the latter exhibit to the jury room. The State also offered a certified copy of defendant's driving abstract (People's exhibit No. 3), which the court admitted, but because the abstract was "a full listing" and included convictions, the court decided against publishing the abstract to the jury. Instead, the court instructed the jury: "People's exhibit [No.] 3 has been

received in evidence. It is a certified copy of the records of the Secretary of State indicating that on September 8, 2015, [defendant's] driver's license was revoked."

¶ 35                                    6. *The Verdict*

¶ 36        On January 21, 2016, the jury found defendant guilty of both DUI and driving while his driver's license was revoked.

¶ 37                                    B. The Sentence

¶ 38        On March 11, 2016, after denying a motion by defendant for a new trial or, alternatively, for a judgment notwithstanding the verdict, the trial court sentenced him to concurrent terms of five years' imprisonment for DUI and two years' imprisonment for driving while his driver's license was revoked. (Defendant had been convicted of DUI twice before.) The court also imposed three fines: $1000 for driving under the influence, $100 for the trauma fund, and $5 as a spinal cord fee.

¶ 39        After imposing those fines, the trial court stated: "I have 154 days served," and the court asked: "Does anybody else have a chance to calculate that?" Defense counsel responded:

> "MR. RUETER: I would say 155 [days], Judge. [Because] you would include the first day of arrest, the 9th.
>
> MS. COURI: That is fine.
>
> THE COURT: Okay. 155 days. He is given an incarceration credit[,] then[,] on his fines of $775 dollars [*sic*]. Anything else we need to—and he is also sentenced to two years of mandatory supervised release or parole upon his release. Anything else we need to do before we get to [the Rule] 605 [admonitions], State?

MS. COURI: I don't believe so. Thank you, sir.

THE COURT: Mr. Rueter?

MR. RUETER: And I'm so sorry, Judge, looking at that again, I think it is 185 [days], actually.

THE COURT: I've got—

MR. RUETER: Twenty-two days of September.

THE COURT: Thirty-one [days] in October, [30 days] in November, [31 days] in December, and you got [31 days] in January, [29 days] in February, and [10 days] in March.

MR. RUETER: Right. I think, well, I think that comes up to 185 [days].

THE COURT: Let's just get out the calculator and see what it comes up to.

MR. RUETER: There would be a credit of—Well, actually, 184 [days]. So[,] it would be a credit of $920.

THE COURT: I think you may be right. [One hundred eighty-four] days. You are right, 184 [days]. And then $920. Okay. [One hundred eighty-four] days, $920 incarceration credit. Now, we ready for the [Rule] 605 admonitions?

MR RUETER: Yes, sir."

¶ 40                 C. The Motion to Reduce the Sentence

¶ 41      On March 14, 2016, defendant filed a motion to reduce the sentence, which the trial court denied on March 17, 2016.

¶ 42      This appeal followed.

¶ 43                       II. ANALYSIS

¶ 44                     A. The Irrelevance of the *Corpus Delicti* Rule

¶ 45          Defendant invokes the *corpus delicti* rule, which provides that "the occurrence of a crime cannot be established solely by a defendant's uncorroborated confession." *People v. Richmond*, 341 Ill. App. 3d 39, 42 (2003). Because defendant never confessed to either of the charged offenses, the *corpus delicti* rule that "an uncorroborated confession is insufficient to support a conviction" is inapplicable. There is a difference between, on the one hand, confessing to a crime and, on the other hand, admitting facts that, taken with other facts, tend to increase the probability of one's guilt. *People v. Manske*, 399 Ill. 176, 185 (1948).

¶ 46                         B. The Sufficiency of the Evidence

¶ 47          According to defendant, the State failed to prove, beyond a reasonable doubt, that he drove under the combined influence of alcohol and cannabis. When a defendant contends, on appeal, that the evidence in the trial is insufficient to support his conviction, we do not retry the defendant. *People v. Digirolamo*, 179 Ill. 2d 24, 43 (1997). Instead, our "standard of review is whether, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* We apply this standard regardless of whether the evidence was direct or circumstantial. *Id.* "Circumstantial evidence is proof of certain facts and circumstances from which the trier of fact may infer other connected facts that human experience dictates usually and reasonably follow." *People v. White*, 2016 IL App (2d) 140479, ¶ 37. "Circumstantial evidence alone is sufficient to sustain a conviction where it satisfies proof beyond a reasonable doubt of the elements of the crime charged." *Digirolamo*, 179 Ill. 2d at 43.

¶ 48          In count I of the information, the State charged defendant with violating subsection (a)(5) of the DUI statute (625 ILCS 5/11-501(a)(5) (West 2014)). The elements of

count I were that (1) he drove or was in actual physical control of the pickup truck (2) while he was under the combined influence of alcohol and cannabis (3) to a degree that rendered him incapable of driving safely. *Id.* Defendant does not appear to dispute the latter two elements, and in any event, we find sufficient evidence that he was too intoxicated by alcohol and cannabis to drive safely. A field sobriety test and chemical testing were not essential to proving he was drunk. "A DUI conviction may be sustained based solely on the testimony of the arresting officer, if credible." *People v. Janik*, 127 Ill. 2d 390, 402 (1989). Three police officers who had observed defendant testified he was highly intoxicated. It would be reasonable to infer that the reason why he refused to undergo a field sobriety test and a breath test was that he knew these tests would confirm he was under the influence. See *People v. Garstecki*, 382 Ill. App. 3d 802, 813 (2008). Looking at such evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could find, beyond a reasonable doubt, that defendant was so intoxicated with alcohol and cannabis that it was dangerous for him to drive. See *Digirolamo*, 179 Ill. 2d at 43.

¶ 49 Further applying the same deferential standard of review, we find sufficient circumstantial evidence that defendant drove the pickup truck while he was intoxicated. By his own admission, his cell phone and flip-flop were on the driver's-side floorboard of the truck. Although he told the police that Buddy Young had been the driver, he did not know how long he had been acquainted with Buddy Young or where Buddy Young could be reached—leading to a reasonable inference that Buddy Young was a fictitious character and leading, in turn, to a further reasonable inference that the reason why defendant lied was that he, in fact, had been the driver. "A false exculpatory statement is probative of a defendant's consciousness of guilt." (Internal quotation marks omitted.) *People v. Milka*, 211 Ill. 2d 150, 181 (2004). That defendant,

- 11 -

six to eight miles from home, left behind his cell phone and shoes and set out on a barefooted hike down the highway could be suggestive of a hasty departure, as if he felt a pressing need to put distance between himself and the scene of his crime. See *People v. Henderson*, 39 Ill. App. 3d 502, 507 (1976) ("The concept of flight embodies more than simply leaving the scene of the crime. The accused must be attempting to avoid arrest or detection, actions which impl[ies] a consciousness of guilt."). And, again, "[a] defendant's refusal to submit to chemical testing is relevant circumstantial evidence of his consciousness of guilt." *Garstecki*, 382 Ill. App. 3d at 813. Viewing the evidence in the light most favorable to the prosecution, we draw the inference that defendant opposed the chemical confirmation of his intoxication precisely because he had been driving; otherwise, it would not have mattered how intoxicated he was. See *People v. Gray*, 2017 IL 120958, ¶ 53 ("[v]iewing all of the evidence in the light most favorable to the prosecution, coupled with the reasonable inferences that may be drawn therefrom").

¶ 50            It would, after all, be a natural inference that defendant, as the registered owner of the truck, was the person who had driven the truck. See *People v. Lurz*, 379 Ill. App. 3d 958, 971 (2008). The jury did not need Herbert to testify that defendant was the registered owner. The jury could have readily inferred as much from what Wendell and Herbert *did* in their investigation. See *People v. Gacho*, 122 Ill. 2d 221, 248 (1988) (such testimony is not hearsay, even if "the inference logically to be drawn therefrom is that the information received motivated the officers' subsequent conduct" (internal quotation marks omitted)); *People v. Risper*, 2015 IL App (1st) 130993, ¶ 40 (testimony "recounting the steps taken in a police investigation" is not hearsay "even if, as a result of this testimony, a jury might be able to infer" "what nontestifying witnesses [had] told [the police]" (internal quotation marks omitted)); *People v. Leverston*, 132 Ill. App. 3d 16, 33 (1985) ("[W]e have often held that testimony which reflects an investigatory

- 12 -

procedure entirely within the personal knowledge of the police officers is properly admissible as nonhearsay evidence [citations], even though the logical inference drawn therefrom is that the information they received motivated their subsequent conduct [citation]."). It is commonly known that the first thing police officers do is run the license plates. There appears to be no evidence that when Wendell came upon defendant, a mile from the scene of the accident, he asked defendant if he had been in the accident. Instead, he asked defendant for identification, and when he looked at defendant's state identification card, the name he read apparently was reason enough to take defendant up the road, to the scene of the accident. It was reason enough, the jury may well have inferred, because Herbert had run the license plates and defendant's name had come back as the registered owner of the truck. One might infer that was why, when Wendell brought defendant to the scene, Herbert talked to defendant as if it already were a given that he had been in the accident.

¶ 51        For all those reasons, we find sufficient evidence that the driver was defendant.

¶ 52                          C. The Claim of Plain Error

¶ 53        Defendant alleges prosecutorial misconduct. According to him, the prosecutor repeatedly attempted to elicit testimony from Herbert that the pickup truck was registered to defendant, even though, in response to defendant's objection, the trial court clearly ruled, from the start, that such testimony was inadmissible hearsay.

¶ 54        As defendant admits, however, he never raised this issue in his posttrial motion. To preserve an issue for review, a defendant must make a contemporaneous objection and also raise the issue in a posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Doing only one those two things is not enough. *Id.*

¶ 55 Even so, defendant argues that the doctrine of plain error should avert the procedural forfeiture. See *People v. Thompson*, 238 Ill. 2d 598, 613 (2010) (the doctrine of plain error bypasses forfeiture principles and allows a reviewing court to consider unpreserved claims of error). He invokes both of the alternative theories, or "prongs," of plain error. He contends that (1) the evidence was closely balanced and (2) the error was so serious as to threaten the integrity of the judicial system. See *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005).

¶ 56 Because there can be no plain error without an error (*People v. Smith*, 2016 IL 119659, ¶ 39), we begin by considering whether the error that defendant alleges—prosecutorial misconduct—really occurred. Defendant argues it is prosecutorial misconduct to "defy the trial court's rulings by repeating the same questions after objections have been sustained." *People v. Larry*, 218 Ill. App. 3d 658, 663 (1991). Repeatedly trying to introduce improper evidence can deprive the trial court's rulings of their "salutary effect." *Id.*

¶ 57 Actually, though, there was no repetition of an objectionable question. Only once did the prosecutor ask Herbert a question calculated to elicit from him who the registered owner of the pickup truck reportedly was, and in that instance the prosecutor had a good-faith argument that Herbert's answer would not be hearsay. The prosecutor asked Herbert: "When Deputy Wendell located an individual by the name of William Day, why did you ask that he be transported back to your scene?" Herbert answered: "The vehicle checked to William Day." In response to defense counsel's general objection, the prosecutor stated: "Your Honor, I would argue that that is not offered for the truth of the matter asserted, but why he was proceeding in the investigation in the manner he did."

¶ 58 This was a reasonable argument. Case law teaches: "Statements are not inadmissible hearsay when offered for the limited purpose of showing the course of a police

investigation where such testimony is necessary to fully explain the State's case to the trier of fact." *People v. Jura*, 352 Ill. App. 3d 1080, 1085 (2004). In other words, "[a] police officer may testify about conversations with others to show the steps in his investigation so long as this testimony is not used to prove the truth of the matter asserted by these other persons." *People v. Williams*, 289 Ill. App. 3d 24, 31 (1997); see also Ill. R. Evid. 801(c) (eff. Jan. 1, 2011) (defining "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, *offered in evidence to prove the truth of the matter asserted*" (emphasis added)). The prosecutor had a good-faith argument that when she elicited from Herbert the testimony that "[t]he vehicle checked to [defendant]," her purpose in doing so was to explain to the jury why Herbert had directed Wendell to transport defendant back to the scene, not to prove that the vehicle really was reigstered to defendant. Given that purpose, Herbert's testimony that "[t]he vehicle checked to [defendant]" would not have been hearsay because, instead of being offered for its truth (see Ill. R. Evid. 801(c) (eff. Jan. 1, 2011)), the testimony would have been offered to explain Herbert's investigatory actions (see *Jura*, 352 Ill. App. 3d at 1085; *Williams*, 289 Ill. App. 3d at 31).

¶ 59    As for the other, previous instance when Herbert testified the truck was registered to defendant, it was testimony he volunteered, testimony that was nonresponsive to the prosecutor's question. We see no basis for accusing the prosecutor of misconduct when, only once, her witness briefly inserted uncalled-for information in his answer. Therefore, the error that defendant alleges, prosecutorial misconduct, is nonexistent in this case. We see no "repetition of objectionable questions" by the prosecutor. *Larry*, 218 Ill. App. 3d at 663. Quoting *People v. Blue*, 189 Ill. 2d 99, 138 (2000), defendant argues that "[i]ntentional and pervasive prosecutorial misconduct may *** warrant reversal under the substantial right prong of the plain error rule,

- 15 -

'regardless of the strength of the evidence of defendant's guilt.' " (Emphasis omitted.) But there was no intentional and pervasive prosecutorial misconduct in this case.

¶ 60 For that matter, defendant has not even identified an error. When Herbert volunteered, in his testimony, that defendant was the registered owner of the pickup truck, the trial court sustained not only defense counsel's objection but immediately instructed the jury to disregard the testimony. The next time Herbert testified that "[t]he vehicle checked to [defendant]," his testimony might have been offered for a reason other than its truth, as we have explained—but the court nevertheless sustained defense counsel's objection. After the close of evidence, the court instructed the jury: "You should disregard testimony *** which the court has refused or stricken." We presume the jury followed the court's instructions, including that one. See *People v. Glasper*, 234 Ill. 2d 173, 201 (2009). On the strength of that presumption, we find no error, let alone plain error.

¶ 61 D. Clerk-Imposed Fines

¶ 62 Defendant complains that, in a "Payment Status Information" sheet, the circuit clerk imposed on him several fines that the trial court never imposed in the sentencing hearing. He requests that we vacate these clerk-imposed fines, since only a judge can impose fines. See *People v. Smith*, 2014 IL App (4th) 121118, ¶ 18.

¶ 63 On December 29, 2017, we granted a motion by defendant to supplement the record with this "Payment Status Information" sheet. Later, on June 1, 2018, the supreme court held in *People v. Vara*, 2018 IL 121823, ¶ 22:

> "[T]he payment status information sheet *** is a document that was created outside the record of the trial court proceedings. Although defendant was granted leave to include it as a 'supplement' to the record, that leave was not warranted.

- 16 -

Illinois Supreme Court Rule 608 (eff. July 1, 2017) details the items that are to be included in the record on appeal in a criminal case. The payment status information sheet is not part of the common-law record or the report of proceedings of defendant's criminal prosecution. Under Illinois Supreme Court Rule 329 (eff. Jan. 1, 2006), a supplemental record may be filed to correct material omissions or inaccuracies or if the record is insufficient to present fully and fairly the question involved. Amendment of the record is not to be used as a device for inserting extraneous materials into the record on appeal. The payment status information sheet at issue here cannot be characterized as a 'material omission' or something that should have been included in the record of the proceedings before the circuit court."

¶ 64    It follows, from the quoted discussion, that we should not have granted leave to supplement the record with the "Payment Status Information" sheet. Therefore, we change our ruling of December 29, 2017, so as to deny, rather than grant, defendant's motion to supplement the record with the "Payment Status Information" sheet. Because we are confined to the record on appeal (*People v. Canulli*, 341 Ill. App. 3d 361, 367-68 (2003); *People v. Wilson*, 2013 IL App (1st) 112303, ¶ 16), the issue of clerk-imposed fines, which are ascertainable only from the "Payment Status Information" sheet, is not legitimately before us.

¶ 65    E. Defendant's Claim for an Additional Day of Presentence Credit

¶ 66    Beginning on the day of arrest, a defendant is entitled to one day of credit against his or her prison sentence for each day or portion of a day that the defendant spent in presentence custody. 730 ILCS 5/5-4.5-100(b) (West 2014); *People v. Leach*, 385 Ill. App. 3d 215, 223 (2008). Credit should be given for the day on which custody begins but not for the day on which

the defendant is taken into the custody of the Illinois Department of Corrections. *People v. Williams*, 239 Ill. 2d 503, 509 (2011).

¶ 67　　　　Defendant was arrested on September 8, 2015, and he remained in the custody of the Macon County Sheriff's Department until his sentencing hearing, which was held on March 11, 2016. Defendant complains that the trial court gave presentence credit, however, only for the period of September 9, 2015, to March 10, 2016, a total of 184 days, instead of giving him presentence credit for the period of September 8, 2015, to March 10, 2016, a total of 185 days. He argues that we should remand this case with directions to award him an additional day of presentence credit.

¶ 68　　　　But in awarding defendant 184 days of presentence credit, the trial court relied on defense counsel's affirmative representation that defendant should be awarded 184 days of presentence credit. "Under the doctrine of invited error, an accused may not request to proceed in one manner and then later contend on appeal that the course of action was in error." *People v. Carter*, 208 Ill. 2d 309, 319 (2003). "Action taken at defendant's request precludes defendant from raising such course of conduct as error on appeal." *Id.* Although the doctrine of plain error can avert a procedural default, it does not avert the estoppel that results from affirmatively inviting the commission of what the inviter later, on appeal, contends to be an error. *People v. Bowens*, 407 Ill. App. 3d 1094, 1101 (2011).

¶ 69　　　　Thus, although the State concedes defendant's entitlement to an additional day of presentence credit, we decline to accept that concession (see *People v. Carter*, 2015 IL 117709, ¶ 22; *People v. Hayes*, 2016 IL App (3d) 130769, ¶ 26), and we hold, instead, that the doctrine of invited error estops defendant from claiming the additional day of presentence credit (see *People v. Harvey*, 211 Ill. 2d 368, 385 (2004)). "To permit a defendant to use the exact ruling or action

procured in the trial court as a vehicle for reversal on appeal would offend all notions of fair play [citation], and encourage defendants to become duplicitous [citation]." (Internal quotation marks omitted.) *Id.*

¶ 70                              F. The Claim for an Additional $5 of *Per Diem* Credit

¶ 71              Defendant also claims that, for September 8, 2015, he deserves an additional $5 of credit against his DUI fine of $1000. See 725 ILCS 5/110-14(a) (West 2014). In other words, he argues he is entitled to $925 in *per diem* credit for 185 days in presentence custody instead of the $920 the trial court awarded him for only 184 days in presentence custody.

¶ 72              This is another about face. In the sentencing hearing, defense counsel told the trial court: "There would be a credit of—Well, actually, 184 [days]. So[,] it would be a credit of $920." Consequently, the doctrine of invited error estops defendant from challenging the correctness of $920 as the amount of *per diem* credit. See *Harvey*, 211 Ill. 2d at 385; *Carter*, 208 Ill. 2d at 319.

¶ 73              Even if defendant could somehow overcome this estoppel, we agree with the State that he has failed to establish, from the record, that he really is entitled to an additional $5 of *per diem* credit. The statute authorizing such credit provides as follows: "Any person *incarcerated* on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense shall be allowed a credit of $5 for each day so *incarcerated* upon application of the defendant." (Emphases added.) 725 ILCS 5/110-14(a) (West 2014). We should give the words of a statute their plain and ordinary meanings, which can be found in a dictionary (*People v. Perry*, 224 Ill. 2d 312, 330 (2007)), and the plain and ordinary meaning of "incarcerate" is to "imprison" (New Oxford American Dictionary 858 (2001)). As the State points out, someone can be in custody without being incarcerated (see *People v. Riley*, 2013 IL

App (1st) 112472, ¶¶ 12-13), and the record contains no evidence that on September 8, 2015, defendant was, as of yet, incarcerated. As of 11:55 p.m. on September 8, 2015, he was being obstreperous in the DUI processing room or prebooking area. At that time, he was in custody, but he was not yet incarcerated, *i.e.*, placed in a jail cell. It seems unlikely that he would have been booked and incarcerated within the next five minutes; and as the State observes, the record does not prove that he was.

¶ 74                                    III. CONCLUSION

¶ 75          For the foregoing reasons, we affirm the trial court's judgment.

¶ 76          Affirmed.